Strafford
No. 2006-646

PHILIP AUGER *& a.*

v.

TOWN OF STRAFFORD *& a.*

Argued: May 10, 2007
Opinion Issued: August 23, 2007

*Michael L. Donovan*, of Concord, by brief and orally, for the plaintiffs.

*Mitchell & Bates, P.A.*, of Laconia (*Walter L. Mitchell* and *Judith E. Whitelaw* on the memorandum of law), for the defendant.

*Wiggin & Nourie, P.A.*, of Manchester (*Gregory E. Michael* and *Patricia M. Panciocco* on the brief, and *Mr. Michael* orally), for the intervenor.

DALIANIS, J. The plaintiffs, abutters to and neighbors of a conservation development subdivision (CDS) proposed by the intervenor, Graystone Builders, Inc. (Graystone), appeal an order of the Superior Court (*Fauver, J.*) affirming a decision of the planning board for the defendant, the Town of Strafford, that approved Graystone's proposed CDS and yield plan. Graystone cross-appeals the trial court's remand of a wetlands issue to the board. We affirm in part, reverse in part, vacate in part and remand.

The record reveals the following: Graystone proposes to build a CDS on a sixty-five-acre lot in Strafford, which contains, according to the trial court, "a broad expanse of wetlands." Pursuant to the Strafford zoning ordinance, a CDS is a "method of subdivision design that provides for the protection of natural, environmental, and historic land features by permitting variation in lot sizes and housing placement." A CDS "allows a residential subdivision where dwellings are allowed on reduced lot sizes and a portion of the tract is set aside as ... land to be kept permanently unbuilt upon." A CDS must meet certain requirements specific to such developments as well as "all other zoning and subdivision requirements."

To determine the number of houses that may be built in a CDS, the board may require a "yield plan." A yield plan shows the number of houses that could be built in a conventional development that meets all applicable state and local requirements. Additionally, a yield plan must depict the roadway rights of way, property lines, wetlands and lot areas. It must "show all wetlands and proposed disturbances in sufficient enou[g]h detail so that the impact can be assessed by the Board." Further, the yield plan must minimize the total proposed wetlands disturbance in accordance with requirements of the New Hampshire Department of Environmental Services (DES) Wetlands Bureau. According to the relevant subdivision regulation, "[i]n most cases this would be less than a total of 20,000 square feet of wetlands impact."

Graystone submitted a proposed yield plan and a CDS for the property. The board approved the yield plan on March 4, 2004, and conditionally approved the CDS on August 11, 2005. The proposed CDS contains seventeen building lots serviced by a cul-de-sac, and 31.8 acres of open space burdened by a permanent conservation easement. The yield plan contains eighteen lots serviced by a loop road and shows less than 20,000 square feet of wetlands impact.

The plaintiffs appealed the board's approval of the yield plan and CDS to the superior court. The trial court substantially affirmed the board, remanding only a wetlands issue. This appeal and cross-appeal followed.

Our review of the superior court's decision is deferential. *Summa Humma Enters. v. Town of Tilton*, 151 N.H. 75, 79 (2004). We will uphold the decision on appeal unless it is unsupported by the evidence or legally erroneous. *Id.*

■■■■ Superior court review of decisions of planning boards is equally limited. *Id.* The superior court is obligated to treat the factual findings of the planning board as *prima facie* lawful and reasonable and cannot set aside its decision absent unreasonableness or an identified error of law. *Id.* The appealing party bears the burden of persuading the superior court that, by the balance of probabilities, the board's decision was unreasonable. *Id.* The review by the superior court is not to determine whether it agrees with the planning board's findings, but to determine whether there is evidence upon which they could have been reasonably based. *Id.*

*I. Approval of CDS*

*A. Waiver of Ten-Lot Requirement*

With respect to the board's approval of the CDS, the plaintiffs first argue that the trial court erred when it affirmed the board's decision to

waive a requirement that there be no more than ten lots on a dead-end street. One of the town's subdivision regulations states that a dead-end street may service no more than ten lots. The CDS approved by the board, however, contains a cul-de-sac that services seventeen lots. The record reveals that the board decided to waive the ten-lot requirement because it preferred the cul-de-sac configuration in the proposed CDS to the loop road configuration in the yield plan. The trial court ruled that the waiver was reasonable under the circumstances. We disagree.

The board's subdivision regulations permit the board to approve a plan that substantially conforms to the regulations where "strict conformity to these regulations would cause undue hardship or injustice to the owner of the land" and "the spirit of these regulations and public convenience and welfare will not be adversely affected." This is consistent with RSA 674:36, II(n) (Supp. 2006), which allows a planning board to adopt regulations providing for waiver where "strict conformity would pose an unnecessary hardship to the applicant and waiver would not be contrary to the spirit and intent of the regulations."

The plaintiffs contend that, because there is no evidence that the loop road configuration would cause "undue hardship or injustice" to Graystone, the board erred by waiving the ten-lot requirement. We agree. The board had no evidence before it that the loop road configuration would cause any hardship to Graystone, much less "undue hardship." The record reveals that the sole reason that the board decided to waive the ten-lot requirement was because it preferred the cul-de-sac design, not because the loop road design would cause "undue hardship or injustice" to Graystone. To the extent that the trial court found otherwise, its finding is not supported by the record. Absent any evidence of "undue hardship or injustice" to Graystone, we hold that the board erred by waiving the ten-lot requirement and that the superior court erred by upholding this. We, therefore, reverse the superior court's decision to uphold the board's approval of Graystone's proposed CDS and remand for further proceedings consistent with this opinion.

In the interests of judicial economy, we address the parties' other arguments inasmuch as they are likely to arise upon remand. *See Kelleher v. Marvin Lumber & Cedar Co.*, 152 N.H. 813, 847 (2005).

### B. Study of Environmental Impact on Lake

The plaintiffs next assert that the superior court erred when it affirmed the board's approval of the proposed CDS because the board reneged upon its promise to review the environmental impact of the proposed CDS upon a nearby lake to which the plaintiffs have easement rights. Absent citation

to any authority to support their argument, the plaintiffs contend that the board's failure to conduct this review violated their procedural due process rights.

The plaintiffs, however, have failed to develop this argument sufficiently for our review. *See In the Matter of Bazemore & Jack,* 153 N.H. 351, 356 (2006). The plaintiffs have not sufficiently stated the legally protected interest they claim is at issue. Nor, as the trial court observed, have they "pointed to [any] authority guaranteeing them independent engineering review of the impacts on [the lake] as part of their due process rights." Under these circumstances, we decline to review their argument.

### C. Board Member Absence

Next, the plaintiffs argue that their procedural due process rights were violated because a board member voted upon the proposed CDS even though he missed two of the multiple hearings on the proposal. We address this argument under the Federal Constitution only as the plaintiffs have failed to cite any provision under the State Constitution. *See State v. MacElman,* 154 N.H. 304, 310 (2006).

■ "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). Under the Federal Constitution, analyzing a party's due process claim requires review of three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

■ The record reveals that the plaintiffs received all of the process to which they were constitutionally entitled. The board member at issue missed only two hearings over several years and he voted after having visited the site and reviewing applicable notes. "[T]he Constitution does not [necessarily] require that all members of an administrative board must take part in every decision, or that the failure of one participating member to attend one hearing vitiates the entire process." *Simard v. Board of Education of Town of Groton,* 473 F.2d 988, 994 (2d Cir. 1973).

The plaintiffs mistakenly rely upon *Petition of Grimm,* 138 N.H. 42, 46-47 (1993), and *Petition of Smith,* 139 N.H. 299, 302-05 (1994), to support their argument. In *Petition of Grimm,* we examined an exception to the

general rule that "in administrative proceedings ... an administrative officer may act on a written record of testimony by witnesses whom he has not personally seen or heard." *Petition of Grimm*, 138 N.H. at 46 (quotation omitted). In that case, we ruled that where "the board elects to make factual determinations as a hearing panel and the record does not provide a reasonable basis for evaluating the kind of testimony in question," and the matter at issue turns upon witness credibility, "due process requires all panel members deciding the case to be in attendance for all of the parties' testimony, plus any other testimony on the issue of credibility, in order to effectively assess the issue of credibility." *Id.* at 46-47. For similar reasons, we also applied this exception in *Petition of Smith*, 139 N.H. at 302-04.

Both *Petition of Grimm* and *Petition of Smith* are factually dissimilar to the instant case. Here, unlike *Petition of Grimm* and *Petition of Smith*, the board's decision did not turn upon credibility. Nor did the board make findings about credibility. "This case is thus unlike *Petition of Grimm* [and *Petition of Smith*] in which the failure of board members to attend a hearing rendered them unable to resolve a crucial credibility contest." *Appeal of Alton School Dist.*, 140 N.H. 303, 314 (1995).

## II. Yield Plan Approval

### A. Remand of Wetlands Issue

In its cross-appeal, Graystone contends that the superior court erred by remanding to the board for further review the wetlands impact of the development depicted in the yield plan. The superior court found that the yield plan did not comply with applicable subdivision regulations, which required the plan to show all wetlands and proposed disturbances in sufficient detail so that the board could assess the impact, and to show that the proposed wetlands disturbance would be minimized in accordance with DES requirements. The superior court found that although the yield plan depicted the location of the wetlands, it did not contain detailed information about the proposed disturbances and impact on those wetlands. Accordingly, it ruled that the board erred when it approved the yield plan. Rather than reversing this aspect of the board's decision, however, the superior court remanded to the board to "obtain the information necessary" for determining whether the yield plan complied with the applicable regulations.

Graystone contends that remand is unnecessary either because the board waived the wetlands portion of the applicable regulations or because the evidence before the board was sufficient to establish that the yield plan, in fact, complied with these regulations. We agree with Graystone

that remand was improper, but uphold the superior court's predicate finding that the board erred when it approved the yield plan because there was insufficient evidence that it met the applicable subdivision regulations.

The superior court's ruling that the yield plan failed to comply with the applicable regulations is supported by the evidence and is not legally erroneous. *Summa Humma Enters.*, 151 N.H. at 79. While the regulations require the yield plan to "show all wetlands and proposed disturbances" in sufficient detail so that the board could assess the impact of a conventional development upon the wetlands, the yield plan that Graystone submitted failed to contain such detail. Under these circumstances, it was not error for the superior court to conclude that the board unreasonably approved the yield plan.

Having determined this, however, the superior court should have reversed the board's approval of the yield plan, instead of remanding to the board for it to determine whether the plan complied with the applicable regulations. We, therefore, vacate the superior court's decision to remand this issue to the board.

*B. Fifty-Foot Right of Way*

In the interests of judicial economy, we address the plaintiffs' argument that the board erred by approving the yield plan because it depicts a right of way of less than fifty feet. The board found that the yield plan depicted a right of way of forty-five feet. The board approved the yield plan with the condition that if a court, in related litigation concerning the right of way, ruled that Graystone could not use this right of way, the yield plan would be nullified. Later, when approving the CDS, the board required Graystone to upgrade the road with the right of way to provide access to the CDS. The trial court ruled that the board acted reasonably. The parties do not dispute that the street with the right of way exists only as a paper street.

The plaintiffs argue that because the subdivision regulations require a fifty-foot right of way, and the yield plan uses an access road with a forty-five-foot right of way, the board erred when it approved the yield plan. We agree.

The subdivision regulations define a right of way as "[a] strip of land occupied or intended to be occupied by a street." A street is defined as a "public way." "All street construction except private roads serving no more than three lots shall conform to the dimensions shown on the typical section." The "typical section" shows a fifty-foot right of way. As the yield plan depicted a right of way of less than fifty feet on a road that would be constructed if the yield plan were ever developed, the board erred by

approving it. To the extent that the board waived the fifty-foot right of way requirement when it approved the yield plan, it did so in error absent evidence of undue hardship or injustice to Graystone.

*Affirmed in part; reversed in part; vacated in part; and remanded.*

BRODERICK, C.J., and DUGGAN and GALWAY, JJ., concurred.