Rockingham
No. 2007-381

THE STATE OF NEW HAMPSHIRE

v.

KOREAN METHODIST CHURCH OF NEW HAMPSHIRE

Argued: January 31, 2008
Opinion Issued: May 16, 2008

*Kelly A. Ayotte*, attorney general (*Lynmarie C. Cusack*, assistant attorney general, on the brief and orally), for the State.

*Cronin & Bisson, P.C.*, of Manchester (*John F. Bisson* and *John G. Cronin* on the brief, and *Mr. Cronin* orally), for the defendant.

DUGGAN, J. The defendant, Korean Methodist Church of New Hampshire (Church), appeals the denial by the Superior Court (*Coffey*, J.) of its preliminary objection to the declaration of taking filed by the State. *See* RSA 498-A:9-a, :9-b (Supp. 2007). We affirm.

The record supports the following facts. The State initiated this condemnation proceeding in connection with the planned construction of a new access road to the Manchester-Boston Regional Airport and the associated

environmental mitigation. *See* RSA 230:45 (Supp. 2007). Approximately 100 acres of upland forest and other terrestrial habitat will be destroyed because of the project. Additionally, a new bridge and roadway will be laid over approximately twelve acres of wetlands and one acre of the Merrimack River. To compensate for these environmental impacts, the State has sought to acquire approximately 760 acres for preservation, approximately four acres of which belong to the Church.

On April 8, 2004, a special committee appointed by the Governor and Executive Council held a public hearing, preceded by notice to each affected property owner, *see* RSA 230:17 (1993), to determine if there was "occasion" for the layout of the proposed mitigation area and to hear evidence regarding the economic, social and environmental effects of the proposed mitigation efforts. *See* RSA 230:14 (Supp. 2007) (amended 2006), :19 (1993), :45; *see also Rodgers Dev. Co. v. Town of Tilton*, 147 N.H. 57, 59-60 (2001) (determining whether "occasion" exists involves balancing public interest in layout against rights of affected landowner and burden imposed upon municipality). The State contends, and the Church does not dispute, that the Church failed to attend this hearing. Following the hearing, the special committee determined that there was occasion for the laying out of the mitigation area, which included the area where the Church's property is located. *See* RSA 230:19.

On November 1, 2006, the State filed a declaration of taking with the New Hampshire Board of Tax and Land Appeals (BTLA), indicating its intent to take a conservation easement interest in the Church's property. *See* RSA 498-A:5 (Supp. 2007) (amended 2006). The Church filed its preliminary objection to the State's declaration of taking on December 4, 2006. *See* RSA 498-A:9-a. In it, the Church contended that: (1) the taking of its property was not a matter of public necessity; (2) other unimproved parcels suitable for mitigation were available for purchase on the open market; (3) the net public benefit of the taking was insufficient to warrant taking the Church's principal asset, given that the Church is a voluntary organization; (4) taking an easement on the Church's property unfairly saddled the Church with tax liability and liability for third-party damages for the partial use of the easement area; and (5) the Church has a pending agreement to sell a portion of the area to a third party for $100,000. Notably, the Church did *not* allege that the special committee's finding of an occasion for laying out the mitigation area was fraudulent or grossly mistaken. *See* RSA 230:14, :19, :45.

Consistent with RSA 498-A:9-b, the Church requested that the BTLA transfer its preliminary objection to the superior court for an evidentiary hearing "on the issues of necessity, public purpose and net public benefit." After reviewing the State's response to the preliminary objection, the court

ruled that, based upon the record before it, the "preliminary objection must be denied." The State contends, and the Church does not dispute, that the Church did not seek leave to submit a reply to the State's response to its preliminary objection.

The focus of the Church's appeal is upon the trial court's failure to hold an evidentiary hearing before ruling on the preliminary objection. The Church asserts, first, that this failure constituted an unsustainable exercise of discretion, and, second, that it violated the Church's State constitutional right to due process.

Before addressing the Church's first argument, we briefly outline the process under the Eminent Domain Procedure Act, RSA chapter 498-A (1997 & Supp. 2007). Before the State may initiate a condemnation proceeding, it must obtain an independent appraisal of the property to be taken and, based upon it, submit an offer to purchase the property to the property owner. *See* RSA 498-A:4 (Supp. 2007). If the offer is accepted, title may then be transferred. *See* RSA 498-A:4, IV(b). If the offer is rejected, the State may commence condemnation proceedings. *See* RSA 498-A:4, IV(c). To do so, the State must first file a declaration of taking with the BTLA. *See* RSA 498-A:5. A record of the declaration must then be filed with the applicable office of the registry of deeds and notice must also be given to the condemnee. *See* RSA 498-A:7, :8 (1997). The condemnee may file a preliminary objection to the declaration of taking within thirty days after the return day of the notice. *See* RSA 498-A:9-a.

There are three permissible grounds for the objection, one of which is to challenge the necessity, public use and net-public benefit of the taking. *See* RSA 498-A:9-a, I(c). If this is the ground upon which the condemnee files a preliminary objection, the BTLA must transfer the objection to the superior court, *see* RSA 498-A:9-b, I, which must then require the State to respond and "may conduct an evidentiary hearing before it rules on the preliminary objection," RSA 498-A:9-b, II. If the superior court denies the preliminary objection, the BTLA must then proceed to determine the amount of just compensation due the condemnee for the taking. *See* RSA 498-A:9-b, III, :25 (Supp. 2007). If the superior court grants the preliminary objection, the BTLA must then determine the damages, if any, due the condemnee, and dismiss the declaration of taking. *See* RSA 498-A:9-b, IV; *see also* RSA 498-A:9-a, V.

■ The Church concedes, as it must, that RSA 498-A:9-b, II vests the superior court with the discretion to hold an evidentiary hearing on a preliminary objection to a declaration of taking. RSA 498-A:9-b, II provides that the superior court "may" hold an evidentiary hearing. "It is a general

rule of statutory construction that the word 'may' is permissive in nature . . . ." *In the Matter of Bazemore & Jack*, 153 N.H. 351, 354 (2006).

We review the superior court's decision to hold an evidentiary hearing under our unsustainable exercise of discretion standard. *See id.* at 355-56. Under this standard, we review only whether "the record establishes an objective basis sufficient to sustain the discretionary judgment made." *State v. Lambert*, 147 N.H. 295, 296 (2001). Unless a party establishes that such a ruling was clearly untenable or unreasonable to the prejudice of the party's case, it will not be disturbed. *Id.*

■ Here, the record establishes an objective basis sufficient to sustain the trial court's decision not to hold an evidentiary hearing on the Church's preliminary objection. The trial court ruled that, to prevail on its preliminary objection, the Church had to establish that the special committee's finding that there was an occasion for the laying out of the mitigation area as proposed was fraudulent or grossly mistaken. *See* RSA 230:14, :19, :45. The Church, however, failed even to allege fraud or gross mistake, much less provide an offer of proof. Absent this, we decline to hold that the trial court's decision not to hold an evidentiary hearing was an unsustainable exercise of discretion.

The Church asserts three arguments against this conclusion. First, the Church contends that requiring it to prove fraud or gross mistake was error. The State counters that the Church failed to preserve this argument, and we agree.

■ As the appealing party, the Church had the burden of providing the court with a record sufficient to demonstrate that it raised all of its appeal issues before the trial court. *Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004); *see* SUP. CT. R. 13, 16(3)(b). The record provided in this appeal, however, fails to show that the Church ever argued before the trial court that requiring it to prove fraud or gross mistake was error. Accordingly, the Church has failed to preserve this argument, and we decline to address it. *See Bean*, 151 N.H. at 250.

Second, the Church argues that because the trial court did not hold an evidentiary hearing, it considered "only one side of the debate." To the extent that this is true, it is not because there was no evidentiary hearing, but because the Church's preliminary objection failed to plead gross mistake or fraud. If the trial court had "only one side of the debate" before it, it is because the Church failed to provide the court with the other side.

Third, the Church asserts that the trial court's decision not to hold an evidentiary hearing was unsustainable because without it, the trial court lacked support for certain findings. The only findings relevant to this appeal

concern the Church's failure to plead gross mistake or fraud. As these findings have ample support in the record, we uphold them.

We turn next to the Church's contention that the trial court's failure to conduct an evidentiary hearing violated the Church's State constitutional rights to due process. *See* N.H. CONST. pt. I, art. 15.

■ To determine whether due process required an evidentiary hearing in the superior court, we normally would examine the following three factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Appeal of Town of Nottingham*, 153 N.H. 539, 551 (2006); *see Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The Church "neither cites nor discusses the foregoing three-factor analysis," *Appeal of Town of Nottingham*, 153 N.H. at 552, and points to no controlling precedent establishing that, in the face of the process that the Church indisputably received, it also had a right to an evidentiary hearing in superior court. Under these circumstances, therefore, we consider this argument undeveloped and decline to review it. *See id.*

*Affirmed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.