Strafford
No. 2008-461

PHILIP AUGER & a.

v.

TOWN OF STRAFFORD

Argued: February 19, 2009
Opinion Issued: April 24, 2009

*Michael L. Donovan*, of Concord, on the brief and orally, for the plaintiffs.

*Walter L. Mitchell III* and *Judith E. Whitelaw*, of Laconia, for the defendant, filed no brief.

*Wiggin & Nourie, P.A.*, of Manchester (*Gregory E. Michael* and *Sheliah M. Kaufold* on the brief, and *Mr. Michael* orally), for the intervenor, Graystone Builders, Inc.

DUGGAN, J. This is the second time this matter has come before us. The plaintiffs are abutters to and neighbors of a conservation development subdivision (CDS) proposed by the intervenor, Graystone Builders, Inc. (Graystone). Graystone appeals a ruling of the Superior Court (*Houran*, J.) granting the plaintiffs' motion for entry of a final order reversing the planning board's approval of the CDS proposal after we previously remanded the matter to the superior court. Graystone argues that the trial court's ruling is not consistent with our mandate in *Auger v. Town of Strafford*, 156 N.H. 64 (2007), which affirmed in part, reversed in part, vacated in part, and remanded. We reverse and remand.

The facts of the underlying case can be found in our previous decision regarding this matter. *See Auger*, 156 N.H. at 65-66. Briefly, Graystone proposes to build a CDS in Strafford. To receive the planning board's approval for a CDS, a developer must submit a CDS proposal. In addition to the CDS proposal, the board may also require a yield plan. The purpose of a yield plan is to aid the board in determining the number of houses that may be built in a CDS by depicting the roadway rights of way, property lines, wetlands, lot areas and the proposed number of houses. The board required a yield plan in this case. Graystone submitted its yield plan and CDS proposal for the property, which the board approved in March 2004 and August 2005, respectively. The plaintiffs appealed the board's decision to the superior court, which affirmed the CDS, but remanded the yield plan to the board to determine whether it complied with the applicable regulations concerning wetlands. The plaintiffs then appealed the superior court's approval of the board's decision, and Graystone cross-appealed the court's remand of the wetlands issue.

In *Auger*, we addressed three issues pertaining to the CDS proposal and two pertaining to the yield plan. First, as to the CDS proposal, we held that the board applied the wrong standard in its waiver of the regulation prohibiting more than ten lots on a dead-end street. *Id.* at 67. Rather than requiring evidence that Graystone would suffer undue hardship or injustice were it required to strictly apply this regulation, the board waived the requirement because "it preferred the cul-de-sac configuration" as opposed to a loop configuration. *Id.* We therefore reversed the superior court's decision to uphold the board's approval of the CDS proposal and remanded the issue for further proceedings consistent with our opinion. *Id.*

In the interest of judicial economy, we addressed the four remaining arguments. We declined to decide the second issue, regarding the board's alleged failure to review the environmental impact of the proposed CDS upon a nearby lake, because the plaintiffs failed to develop the issue sufficiently for our review. *Id.* at 68. As to the third issue concerning the CDS proposal, we affirmed the superior court's ruling that the plaintiffs' procedural due process rights were not violated when a board member voted on the CDS proposal even though he missed two of the multiple hearings on the issue. *Id.* at 68-69.

As to the yield plan, we first held that the superior court erred in remanding the matter to obtain the necessary information for determining whether the yield plan complied with applicable wetland regulations. *Id.* at 69-70. Because there was insufficient evidence in the record to support the board's conclusion, we held that the superior court should have reversed the yield plan instead of remanding it, and we therefore vacated the superior court's decision. *Id.* at 70. Second, we held that because the yield plan depicted a forty-five foot right of way — where the regulation requires a fifty-foot right of way — the board erred in approving the yield plan. *Id.* at 70-71.

On remand, the plaintiffs filed a motion for entry of a final order reversing the board's approval of the CDS proposal and yield plan. Graystone objected, arguing that our mandate required further proceedings; specifically, that the superior court remand the matter to the board to apply the undue hardship standard and determine whether Graystone would suffer any undue hardship justifying the waiver of the ten-lot limit. Graystone also filed a motion requesting a stay and conditional mediation, to which the plaintiffs objected. The superior court granted the plaintiffs' motion and, as a result, ruled that Graystone's motion was moot. Graystone appealed the ruling.

On appeal, Graystone argues that the superior court: (1) erred in its interpretation of the mandate in *Auger*; (2) violated Graystone's due process rights by not considering its substantial investment in the CDS approval process; and (3) erred in failing to consider the town's goal of avoiding further litigation and denying Graystone's motion for a stay to enter mediation.

■ We first address the superior court's implementation of the mandate in *Auger*. As a general proposition, the trial court is bound by the mandate of an appellate court on remand. *State v. Abram*, 156 N.H. 646, 650 (2008). After all, "the mandate is the official notice of action of the appellate court, directed to the court below, and directing the lower court to have the appellate court's judgment duly recognized, obeyed, and executed." *Id.*

(quotation and ellipses omitted). Thus, "a trial court is barred from acting beyond the scope of the mandate, or varying it, or judicially examining it for any other purpose than execution." *Id.* (quotation, citations and brackets omitted).

In implementing the mandate, "the trial court need not read the mandate in a vacuum, but rather has the opinion of [this] court to aid it. In this way, the trial court may examine the rationale of an appellate opinion in order to discern the meaning of language in the court's mandate." *Id.* (quotation, brackets and ellipses omitted). Indeed, the proceedings on remand must be in accordance with both the mandate of this court and the result contemplated in the opinion. *Id.*

Generally, a trial court is free upon remand to "take such action as law and justice may require under the circumstances as long as it is not inconsistent with the mandate and judgment of [this] court." *Id.* at 651 (citing 5 C.J.S. *Appeal and Error* § 1136 (2007)). Because appellate judgments are not self-executing, trial courts have some degree of flexibility in their implementation. *Id.* Therefore, insofar as our opinion in a case does not conclusively decide the parties' rights in the subject matter of the suit, the trial court has some discretion in implementing the mandate. *See id.*; *see also In re Sanford Fork & Tool Co.*, 160 U.S. 247, 258-59 (1895) (holding discretion exists when prior appellate decision reversed lower court but ordered no final judgment). Where, however, our opinion conclusively determines the parties' rights, the trial court has no discretion in implementing the mandate. *See Stewart v. Salamon*, 97 U.S. 361, 362 (1878).

Upon a subsequent appeal to this court following remand, our review is limited to whether the trial court's ruling is consistent with our mandate. *See Abram*, 156 N.H. at 650-51; 5 C.J.S. *supra* § 992. The determination of whether the trial court correctly interpreted our prior opinion and mandate is a matter of law, and we review the trial court's ruling *de novo. See Amax Magnesium v. Utah State Tax Com'n*, 874 P.2d 840, 842 (Utah 1994).

Here, Graystone argues that our opinion in *Auger* did not make a conclusive determination as to the parties' rights, but rather reversed the superior court's ruling and remanded for further proceedings. Specifically, Graystone contends that we remanded the case so that the board could have a chance to apply the correct standard and decide whether there was any undue hardship or injustice meriting a waiver of the ten-lot limit. Thus, Graystone argues, the superior court exceeded its discretion in implementing our mandate by summarily reversing the board's approval of the CDS proposal. The plaintiffs respond that, because there was insufficient

evidence to support any finding of hardship, the superior court correctly reversed the board's approval of the CDS proposal rather than remanding.

■ Although we acknowledge that the mandate was not entirely free from ambiguity, in the context of our opinion in *Auger*, the mandate required that the superior court remand the matter to the board for further proceedings concerning the waiver of the ten-lot limit. *See Auger*, 156 N.H. at 67. Had we intended for the superior court to summarily reverse the board's approval of the CDS proposal, we would not have gone on to address the remaining arguments, which we believed "likely to arise upon remand." *Id.*

■■ Ordinarily, we will remand unresolved factual issues for analysis under the correct legal standard, unless the record reveals that a reasonable fact finder necessarily would reach a certain conclusion, in which case we may decide the issue as a matter of law. *See Johnson v. Town of Wolfeboro Planning Bd.*, 157 N.H. 94, 98 (2008); *Appeal of Cote*, 139 N.H. 575, 580 (1995). Here, Graystone originally proposed a loop road configuration. It later undertook the cul-de-sac design, however, because the board, from an early stage in the proceedings, expressed a preference for that configuration. Without referencing the undue hardship standard at all, the board recommended that Graystone submit a design containing a cul-de-sac in the subdivision. Rather than simply requesting a cul-de-sac design because of personal preference, the board should have undertaken an inquiry into whether any hardship or injustice merited a waiver of the ten-lot limit. Indeed, when abutters later raised concerns in September 2004, the board refused to address the issue because it had previously expressed a preference and thought it would be unfair to Graystone to question the configuration at that point. Because Graystone never had an opportunity to present evidence under the correct standard, more facts must be developed in this case before the issue of undue hardship can be properly decided. It was therefore error for the superior court to reverse the board's approval of the CDS without allowing the board the opportunity to apply the correct standard. *Cf. Chester Rod & Gun Club v. Town of Chester*, 152 N.H. 577, 583 (2005) (concerning appeal from the zoning board of adjustment).

The plaintiffs, however, argue that notwithstanding the waiver issue, the CDS proposal cannot be remanded because the yield plan was reversed. In the absence of a yield plan, they argue, there can be no CDS. Indeed, the superior court adopted the same approach. It recognized that the board's requirement of a yield plan is optional, but ruled that because the board exercised its right to require such a plan in this case, there can be no approved CDS proposal without a valid yield plan. We disagree.

■ Section 1.4.3(A)(3) of the Strafford Zoning Ordinance states that the board "may require a yield plan . . . to determine the maximum number of lots." Such a plan, as the superior court recognized, is not necessary if the board so chooses. *See Duffy v. City of Dover*, 149 N.H. 178, 181 (2003) ("[T]he word 'may' is permissive and implies the use of discretion."). Although the board originally required such a plan here, it could nonetheless choose to waive the yield plan on remand. That decision is ultimately one for the board, which it can resolve as it sees fit. We therefore reverse the superior court's decision and remand for further proceedings consistent with *Auger* and this opinion.

Because we hold that the superior court erred in reversing the board's approval of the CDS, we need not address Graystone's remaining arguments.

*Reversed and remanded.*

BRODERICK, C.J., concurred; BROCK, C.J., retired, specially assigned under RSA 490:3, concurred.