NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

6th Circuit Court–Concord District Division
No. 2015-0383


THE STATE OF NEW HAMPSHIRE

v.

ARTHUR KARDONSKY

Argued:  April 5, 2016
Opinion Issued:  June 14, 2016


Joseph A. Foster, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the brief and orally), for the State.


Nixon Peabody LLP, of Manchester (Anthony J. Galdieri on the brief and orally), for the defendant.


BASSETT, J.  The defendant, Arthur Kardonsky, appeals the finding of the Circuit Court (Boyle, J.) that he was guilty of the violation-level offense of driving after suspension of his driver's license.  See RSA 263:64 (2014).  On appeal, he argues that the trial court erred by ruling that this violation-level offense does not require the mens rea of "knowingly."  Because we agree, we reverse.

The relevant facts follow.  The defendant was originally charged with both a misdemeanor and a violation-level offense for driving his motor vehicle after

his privilege to do so had been suspended. The misdemeanor offense alleged that the defendant drove after his motor vehicle registration had been suspended; the violation-level offense alleged that he drove after his driver's license had been suspended. At trial, defense counsel urged the trial court to "enter a finding of not guilty" as to both the misdemeanor and violation-level offenses because, when the defendant was arrested for driving with a suspended license and registration, he was unaware that they had been suspended, and because "he had a license that on its face appeared valid and the same for the registration." For its part, the State argued that the defendant testified that he "lives at the address to which the notice" of license suspension "was sent," and that "his testimony was conflicting as to what he does and does not recall."

The trial court ruled as follows at the close of evidence:

> Sir, you're charged with operating on a suspended registration, that is a Class B misdemeanor. The State has to prove beyond a reasonable doubt that you drove or permitted to be driven a certain motor vehicle in the State of New Hampshire after knowing that your registration had been suspended by the director of motor vehicles.

> This is a misdemeanor level offense and it carries with it the mens rea of knowingly. I've heard testimony here today that you don't recall whether or not you received a notice from the police officer at the time of your accident that your registration would be suspended and your license would be suspended if you failed to comply with the insurance provisions and in essence guarantee that you would make good on any damages from the accident that you were at fault.

> You've testified that you've had problems getting the mail where you were living at the time and you don't recall ever receiving a notice from DMV that you had, in fact, had your license suspended for failure to comply with the insurance requirements.

> Since there's a mens rea of knowingly on this offense, I'm going to enter a finding of not guilty.

> You also have a violation level offense of operating after suspension. That is a violation level offense[;] it does not require a mens rea of knowingly. What the State must prove is that your license was suspended and that you were operating a motor vehicle while your license was suspended.

> I'm going to enter a finding of guilty to that one.

2

The trial court imposed a $250 fine and a $60 penalty assessment.  See RSA 263:64, VII.  This appeal followed.  The trial court subsequently granted the defendant's motion to stay payment of the fine pending this appeal.

The sole issue on appeal is whether the trial court erred when it ruled that the violation-level offense of which the defendant was found guilty does not require a mens rea of "knowingly."  Before addressing the merits of this issue, we note that the State contends that it is not preserved for our review.  We assume without deciding that the State is correct.  Nonetheless, we elect to address the issue on appeal because preservation is a limitation upon the parties to an appeal, not upon the reviewing court, and because the appeal issue constitutes a discrete question of statutory interpretation, requiring no further factual development.  See Camire v. Gunstock Area Comm'n, 166 N.H. 374, 377 (2014).

We review the trial court's statutory interpretation de novo.  State v. Mayo, 167 N.H. 443, 450 (2015).  We first examine statutory language, and, where possible, we ascribe the plain and ordinary meanings to the words used.  State v. Maxfield, 167 N.H. 677, 679 (2015).  We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.

RSA 263:64 sets forth misdemeanors and violation-level offenses for the same conduct — driving "while the person's driver's license or privilege to drive is suspended or revoked."  RSA 263:64, I.  Under RSA 263:64, whether an offense constitutes a misdemeanor or violation depends upon "the reason for the suspension or revocation."  State v. Curran, 140 N.H. 530, 531 (1995); see RSA 263:64, IV, V-a(b), VI (describing misdemeanor offenses), VII (providing that "[e]xcept as provided in paragraphs IV, V-a, and VI, any person who violates" RSA 263:64 "shall be guilty of a violation").

The very structure of RSA 263:64 indicates that the legislature did not intend that only the misdemeanors set forth therein include a mens rea requirement.  All offenses in RSA 263:64, including violation-level offenses, penalize the same conduct — driving "while the person's driver's license or privilege to drive is suspended or revoked."  RSA 263:64, I.  Moreover, in the trial of any offense under RSA 263:64, including violation-level offenses, "[e]vidence that the notice of suspension or revocation was sent to the person's last known address as shown on the records of the division shall be prima facie evidence that the person was notified of the suspension or revocation."  RSA 263:64, II.

In discerning whether the legislature intended there to be a mens rea of "knowingly" for the violation-level offenses set forth in RSA 263:64, we find our decision in Curran to be instructive.  The issue in that case was whether the legislature intended there to be a mens rea of "knowingly" for the misdemeanor

set forth in RSA 263:64, IV.  Curran, 140 N.H. at 530-31.  Based upon "the language and legislative history of RSA 263:64, combined with the mens rea requirement of RSA 626:2, I," we concluded that the legislature so intended.  Id. at 530-32; see RSA 626:2, I (2007).

Contrary to the State's assertions, the legislative history that we consulted in Curran does not require that we reach a different conclusion in this case.  Under a prior version of the statute, "any violation of the statute constituted a misdemeanor."  Curran, 140 N.H. at 531.  In 1989, the legislature reduced certain offenses to violation-level offenses to "preserve the indigent defense fund from the cost of providing attorneys to defendants who faced no apparent threat of a jail sentence."  Id. at 532; see N.H.S. Jour. 438, 787 (1989).  In Curran, we concluded that this legislative history "offer[ed] no indication that the legislature intended to eliminate the mens rea requirement for those violations of RSA 263:64 that would remain [ ] misdemeanor[s]."  Curran, 140 N.H. at 532.  But neither does that legislative history demonstrate that the legislature intended to modify the mens rea requirement for violation-level offenses.  See id.

RSA 626:2, I, upon which the State also relies, does not require a different result.  RSA 626:2, I, provides that "[a] person is guilty of murder, a felony, or a misdemeanor only if he acts purposely, knowingly, recklessly or negligently," but that a person "may be guilty of a violation without regard to such culpability."  The plain meaning of RSA 626:2, I, is that the legislature need not require proof of a mens rea when it defines a violation-level offense.  However, nothing in RSA 626:2, I, precludes the legislature from creating violation-level offenses that do require proof of a mens rea.  It is a general rule of statutory construction that the word "may" is permissive.  State v. Korean Methodist Church of N.H., 157 N.H. 254, 256-57 (2008).

In arguing for a contrary result, the State relies upon Straut v. Carpenter, 92 N.H. 123 (1942).  The issue in Straut, however, was whether a plaintiff could maintain a personal injury action for his injuries even though he failed to comply with the Financial Responsibility Act.  Straut, 92 N.H. at 124 (preface to opinion).  But see Fuller v. Sirois, 97 N.H. 100, 100-01 (1951) (explaining that Straut is no longer good law).  The State also relies upon RSA 264:3, I (2014), which concerns the mandatory suspension of drivers' licenses and motor vehicle registrations.  The State has failed to demonstrate that either Straut or RSA 264:3, I, are relevant to the issue on appeal — namely, whether the legislature intended violation-level offenses under RSA 263:64 to contain a mens rea of "knowingly."

We need not address the State's remaining arguments because they rebut assertions of the defendant that we have not discussed.  For all of the above reasons, therefore, we hold that the trial court erred when it concluded

4

that the violation-level offense of which the defendant was found guilty does not require a <u>mens</u> <u>rea</u> of "knowingly."

<u>Reversed</u>.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.