# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2020-0483, <u>Torromeo Industries v. State of New Hampshire</u>, the court on May 13, 2021, issued the following order:**

Having considered the parties' briefs and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The plaintiff, Torromeo Industries (Torromeo), appeals an order of the Superior Court (<u>Schulman</u>, J.) issued after we vacated the trial court's award of $70,800 in condemnation damages and remanded to the trial court for further proceedings consistent with our opinion. <u>See</u> <u>Torromeo Indus. v. State of N.H.</u>, 173 N.H. 168 (2020). We affirm.

We recite the background facts as necessary to decide this appeal. Torromeo owns several acres of land in Plaistow on which there is a 4,000-square-foot light industrial building and a 1,500-square-foot single-family residence. <u>Id</u>. at 170. Before the taking at issue, Torromeo's lot consisted of 11.88 acres; the residence occupied approximately .36 acres and the light industrial use occupied approximately 2 acres, leaving approximately 9.52 acres for potential development. <u>Id</u>. The residence rented for $1,500 monthly, net of utilities. <u>Id</u>.

In 2015, the State took approximately 1.9 acres of Torromeo's land by eminent domain and also took approximately 30,000 square feet for permanent and temporary easements. <u>Id</u>. As a result of the taking, Torromeo's property became three, independent parcels: (1) a .36-acre lot on which the residence sits; (2) an approximately 10-acre site on which the light industrial building sits of which approximately 6.55 to 8 acres are considered to be surplus land; and (3) a .28-acre "gore" or uneconomic remnant. <u>Id</u>.

The State offered Torromeo $500 as just compensation for the taking. <u>Id</u>. Torromeo declined the offer and sought a determination of condemnation damages from the New Hampshire Board of Tax and Land Appeals (BTLA). <u>Id</u>. Thereafter, the State offered, consistent with the view of its appraiser, and the BTLA ordered, $35,000 in just compensation. <u>Id</u>. Torromeo petitioned the superior court for <u>de novo</u> review of the BTLA award. <u>Id</u>.

Both parties submitted appraisal reports from their experts, who were the only witnesses at the bench trial. <u>Id</u>. at 171. Relying upon the residential portion of the property's rental value and using the income capitalization approach to value, the State's expert opined that, before the taking, the

residential portion was worth $155,000.  Id. at 172.  The State's expert assumed that, after the taking, the residence would be sold.  Id.  Therefore, he used the sales comparison approach to estimate its selling price.  Id.  Under that approach, the residential lot's value was $190,000.  Id.  The State's expert opined that the surplus land sustained approximately $70,000 in damages, which was offset by the approximately $35,000 that the value of the residential lot increased as a result of becoming a separate, saleable lot after the taking.  Id.

Using the cost approach to value, Torromeo's expert opined that the "before taking" value of the residential lot was $184,000 and its "after taking" value was $70,000.  Id.  Using the sales comparison approach, the expert opined that the "before taking" value of the residential lot (including the dwelling) was $237,500, and its "after taking" value was $112,500.  Id.

Following a hearing and a view, the trial court accepted the State's appraisal except as it related to the residential portion of the property.  Id. at 173.  The court found that the highest and best use of that portion of the property, both before the taking and afterwards, was as a "saleable residential lot."  Id. (quotation omitted).  Although the court recognized that, because of the lot's size, waivers and variances would be required, both before and after the taking, the court decided that "Torromeo would be entitled to subdivision regulation waivers and zoning variances."  Id. (quotation and brackets omitted).  Because the court concluded that the residential portion of the lot could have become a separate, saleable lot both before and after the taking, the court rejected the State appraiser's opinion that the taking increased the lot's value.  Id. at 174.  Instead, the court found that the value of the residential lot remained the same, both before and after the taking.  Id.  Therefore, the court awarded Torromeo $70,800 as just compensation for the taking based upon the State appraiser's opinion that the taking caused the surplus land to sustain $70,000 in damages and upon the $800 value the court gave to a temporary construction easement.  Id.

The State appealed the trial court's determination that the residential lot could have become a separate, saleable lot before the taking, contending that the evidentiary record did not support this determination.  Id. at 176.  We agreed with the State, explaining that "[b]ecause there was no evidence that it was reasonably probable that the property could have been subdivided before the taking, thereby rendering the residential lot separate and saleable, there was no support for the trial court's finding that the lot's 'before taking' value was $190,000, the same as its 'after taking' value under the sales comparison approach."  Id. at 178.  We also explained that, to the extent that the trial court determined that, before the taking, Torromeo would have been entitled to a waiver from the subdivision regulations, that determination was similarly without record support.  Id.

2

Because we were unable to discern how the trial court would have ruled had it not found that the residential lot could have been a separate, saleable lot both before and after the taking, and because we could not determine, as a matter of law, the "before taking" and "after taking" value of that lot, we vacated the trial court's condemnation damages award and remanded for further proceedings consistent with our opinion. Id. at 179-80.

On remand, Torromeo, armed with a new expert witness, filed a motion requesting that the trial court hold a new evidentiary hearing. The trial court denied the motion, reasoning that nothing in our opinion suggested that we "envisioned either a new trial on the merits or a new evidentiary hearing." Based upon its review of the already-developed record, the trial court adopted the opinion of the State's expert that the residential lot with the dwelling and improvements was worth $155,000 before the taking and $190,000 after the taking, and that the non-residential land suffered a $70,000 diminution in value as a result of the taking. Because the residential lot increased in value by $35,000 as a result of the taking, the trial court subtracted $35,000 from the $70,000 diminution in value sustained by the non-residential lot, and awarded Torromeo $35,000 in condemnation damages. Torromeo unsuccessfully moved for reconsideration, and this appeal followed.

On appeal, Torromeo first argues that our opinion in Torromeo "require[d] the State to try the case de novo." We disagree.

"As a general proposition, the trial court is bound by the mandate of an appellate court on remand. Augur v. Town of Strafford, 158 N.H. 609, 612 (2009)." "[A] trial court is barred from acting beyond the scope of the mandate, or varying it, or judicially examining it for any other purpose than execution." Id. at 613 (quotation omitted). However, in implementing the mandate, "the trial court need not read the mandate in a vacuum, but rather has the opinion of this court to aid it. In this way, the trial court may examine the rationale of an appellate opinion in order to discern the meaning of language in the court's mandate." Id. (quotation and brackets omitted). "Indeed, the proceedings on remand must be in accordance with both the mandate of this court and the result contemplated in the opinion." Id.

"Generally, a trial court is free upon remand to take such action as law and justice may require under the circumstances as long as it is not inconsistent with the mandate and judgment of this court." Id. (quotation and brackets omitted). "Because appellate judgments are not self-executing, trial courts have some degree of flexibility in their implementation." Id. "Therefore, insofar as our opinion in a case does not conclusively decide the parties' rights in the subject matter of the suit, the trial court has some discretion in implementing the mandate." Id. "Where, however, our opinion conclusively determines the parties' rights, the trial court has no discretion in implementing the mandate." Id.

3

"Upon a subsequent appeal to this court following remand, our review is limited to whether the trial court's ruling is consistent with our mandate." Id. The determination of whether the trial court correctly interpreted our prior opinion and mandate is a matter of law, and we review the trial court's ruling de novo." Id.

Here, we conclude that the trial court correctly interpreted our prior opinion and mandate. As the trial court aptly concluded, we held in Torromeo that the trial court had erred in determining the highest and best use of the residential portion of Torromeo's lot before the taking because the record did not support the trial court's finding that this portion of the lot "could have been subdivided into a saleable residential lot prior to the taking." See Torromeo, 173 N.H. at 178. We, therefore, vacated the trial court's award of condemnation damages and remanded the case because we could not decide the "before taking" and "after taking" values of the residential lot as a matter of law, and because we could not discern how the trial court would have ruled had it not found that the residential lot could have been a separate, saleable lot both before and after the taking. Id. at 179-80.

We did not require the trial court to hold a new evidentiary hearing to make those findings. Rather, we remanded to the trial court to make the findings in the first instance because we could not do so ourselves as a matter of law. Id. at 179; see Augur, 158 N.H. at 614 ("Ordinarily, we will remand unresolved factual issues for analysis . . . , unless the record reveals that a reasonable fact finder necessarily would reach a certain conclusion, in which case we may decide the issue as a matter of law."); see also Dunn v. CLD Paving, 140 N.H. 120, 123 (1995) ("We do not find facts in the first instance, especially where to do so would require an evaluation of the credibility of witness testimony.").

Torromeo next contends that the trial court violated its constitutional rights to due process by failing to hold a new evidentiary hearing. Torromeo argues that "[n]o final decision should stand until the condemnee has had an opportunity to put the State to its burden of proof to establish the before and after taking damages." The State counters that Torromeo was afforded due process in the bench trial at which the State had the burden to prove, by a preponderance of the evidence, that its deposit of compensation was just, and at which Torromeo presented expert testimony, participated in a view of the property, cross-examined the State's expert witness, and was given the opportunity to introduce any admissible evidence it desired to support its view and to file post-trial memoranda. The State argues that "Torromeo has been afforded every protection and opportunity to be heard," and, therefore, "cannot credibly claim any due process violation."

4

"To determine whether due process required an evidentiary hearing in the superior court, we normally would examine the following three factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." State v. Korean Methodist Church of N.H., 157 N.H. 254, 258 (2008); see Mathews v. Eldridge, 424 U.S. 319, 335 (1976). However, Torromeo "neither cites nor discusses the foregoing three-factor analysis, and points to no controlling precedent establishing that, in the face of the process that [Torromeo] indisputably received, it also had a right to an evidentiary hearing in superior court." Korean Methodist Church of N.H., 157 N.H. at 258 (quotation and citation omitted). "Under these circumstances, therefore, we consider this argument undeveloped and decline to review it." Id.

Affirmed.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**