NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Carroll
No. 2020-0437

BELLEVUE PROPERTIES, INC.

v.

13 GREEN STREET PROPERTIES, LLC & a.

Argued: May 12, 2021
Opinion Issued: October 8, 2021

Bernstein, Shur, Sawyer & Nelson, P.A., of Manchester (Roy W. Tilsley, Jr. and Christina A. Ferrari on the brief, and Roy W. Tilsley, Jr. orally), for the plaintiff.

Sulloway & Hollis, P.L.L.C., of Concord (Derek D. Lick on the brief and orally), for the defendants.

MACDONALD, C.J. The plaintiff, Bellevue Properties, Inc. (Bellevue), appeals an order of the Superior Court (Ignatius, J.) dismissing its petition to quiet title and for declaratory judgment brought against the defendants, 13 Green Street Properties, LLC and 1675 W.M.H., LLC (collectively, 13 Green Street). We affirm.

I.  Background

We recite the following facts, derived in part from a related case, Bellevue Properties v. Town of Conway, 173 N.H. 510 (2020), for background purposes only.  The instant action is one of at least eleven between the parties.  Bellevue owns and operates the North Conway Grand Hotel, which abuts Settlers' Green, an outlet shopping center owned by 13 Green Street.  Bellevue Props., 173 N.H. at 511-12.  Common Court, a road that encircles the hotel and much of Settlers' Green, provides access to the properties.  Id. at 512.  Half of the road is private, and half is public.  Id.

The hotel and Settlers' Green are located between North Conway's main thoroughfare, United States Route 302, and North-South Road.  Id.  From Route 302, the most direct means of accessing Bellevue's property along public ways is by traveling west along Barnes Road, a public road, and then south along McMillan Lane, which was a class V highway until 2017, to the public section of Common Court.  See id.  Access to Bellevue's property from Route 302 is also available via a private road that connects to the private section of Common Court.  Id.  A recorded easement allows hotel guests to travel over the private road and the private section of Common Court.  Id.  From North-South Road, access to Bellevue's property is via Fairway Lane, a public road that connects to the public section of Common Court.  Id.

13 Green Street plans to construct a mixed-use development in Settlers' Green, including a supermarket and parking lot, on an undeveloped parcel of land (Lot 92) and an abutting lot (Lot 85).  Id.  McMillan Lane runs through Lots 92 and 85.  See id.  To construct a single, continuous development across both lots, 13 Green Street seeks to replace McMillan Lane with a new private road that, like McMillan Lane, would run from Barnes Road to the public section of Common Court.  Id.

In connection with 13 Green Street's plans, in April 2017, Town voters voted to discontinue McMillan Lane conditioned upon the road remaining open until 13 Green Street obtained planning board approval to construct an alternative road.  See id. at 513.  Thereafter, 13 Green Street maintained McMillan Lane and kept it open to the public.  Id. at 514.  We subsequently upheld the decision to discontinue McMillan Lane.  Id. at 511.

In July 2018, 13 Green Street applied to the planning board to construct the new road, eliminate McMillan Lane, and build the supermarket, parking lot, and associated infrastructure.  The planning board conditionally approved 13 Green Street's application on November 8, 2018.  See id. at 514.  As a condition subsequent to its final approval, the planning board required 13 Green Street to "substantially complete and open to public use" the new road "prior to closure of McMillan Lane."  Id. (quotations omitted).  We upheld the

2

planning board's decision in an unpublished order. Bellevue Properties, Inc. v. Town of Conway, Case No. 2019-0475, 2020 WL 2306547, at *1 (N.H. Apr. 2, 2020).

In November 2019, Bellevue filed this petition to "[q]uiet title to the land" underneath McMillan Lane "by declaring that [Bellevue] has an easement in the form of a private right of access over same" pursuant to RSA 231:43, III. 13 Green Street moved to dismiss, arguing that Bellevue cannot assert a statutory right of access under RSA 231:43, III because its property does not directly abut McMillan Lane. The trial court agreed with 13 Green Street and dismissed Bellevue's petition. This appeal followed.

II. Analysis

Determining whether Bellevue may claim a statutory right of access pursuant to RSA 231:43, III is a matter of statutory construction. We review the trial court's statutory interpretation de novo. In re A.D., 172 N.H. 438, 441 (2019). When interpreting statutes, we ascribe the plain and ordinary meanings to the words used. Id.

RSA 231:43, III provides, "No owner of land shall, without the owner's written consent, be deprived of access over [a discontinued class IV, V, or VI] highway, at such owner's own risk." RSA 231:43, III (2009). The trial court interpreted the statute as limiting the right of access only to owners of land that directly abut a discontinued highway. The court determined that Bellevue had no statutory right of access over McMillan Lane because its property does not directly abut that road. Bellevue argues that in so ruling, the trial court erred. Bellevue contends the plain language of the statute extends to an "owner of land." Id. Alternatively, Bellevue asserts, even if a statutory right of access is limited to those with land abutting the discontinued highway, Bellevue is an abutter either because the trial court classified it as such in a prior case or because its property is directly across the street from McMillan Lane. See RSA 672:3 (2016) (defining "abutter" for the purposes of providing statutory notice of zoning board proceedings as "any person whose property . . . adjoins or is directly across the street . . . from the land under consideration").

We conclude that even under Bellevue's preferred interpretation, Bellevue has no right of access under RSA 231:43, III because, as a matter of law, such a right is not "reasonably necessary for ingress and egress" to its property. Shearer v. Raymond, 174 N.H. 24, 37 (2021) (describing the common law easement that exists over a highway discontinued before RSA 231:43, III was enacted). Thus, we uphold the trial court's decision on alternative grounds. See Sherryland v. Snuffer, 150 N.H. 262, 267 (2003) ("When a trial court reaches the correct result, but on mistaken grounds, this court will sustain the decision if there are valid alternative grounds to support it.").

3

Although, as Bellevue contends, the statute refers to an "owner of land," the phrase "deprived of access" limits the right to landowners for whom the discontinued highway provides access to their property. RSA 231:43, III. The plain meaning of the word "access" as used in the statute is "[t]he means, place, or way by which a thing may be approached; passageway; as, the access is by a neck of land." Webster's New International Dictionary 14 (2d unabridged ed. 1948). The statute gives landowners for whom the discontinued highway is a means by which they access their property a right to continue to use the highway. If obstructing a discontinued highway deprives an "owner of land" of "access" to that owner's property, then the statute protects the owner by ensuring that the owner retains the right to use the highway as a means of access to the land. RSA 231:43, III.

The phrase "deprived of access" could be interpreted to mean that an owner of land cannot be deprived of use of the discontinued highway to access the owner's land, even if the route over the discontinued highway is one of many routes providing access thereto. However, such an interpretation could render the statute unconstitutional, and we must construe a statute "to avoid a conflict with constitutional rights whenever reasonably possible." Appeal of Public Serv. Co. of N.H., 122 N.H. 919, 922 (1982).

Private property ownership rights are fundamental rights under the New Hampshire Constitution. Merrill v. City of Manchester, 124 N.H. 8, 14-15 (1983). "'Property,' in the constitutional sense, is not the physical thing itself but is rather the group of rights which the owner of the thing has with respect to it." Burrows v. City of Keene, 121 N.H. 590, 597 (1981). "The term refers to a person's right to possess, use, enjoy and dispose of a thing and is not limited to the thing itself." Id. (quotation omitted). A property owner's right to use the owner's property "necessarily includes the right to exclude others from using [it], whether it be land or anything else." Id. (quotation and ellipsis omitted).

Although an owner has an "important property right" to "have reasonable access for ingress and egress," Shearer, 174 N.H. at 34, that right must be balanced against the property rights of persons who own the land underneath the discontinued highway. See id. at 30 (explaining that when a public highway is laid out, generally, the land underneath it remains in the possession of the fee owner subject to the public easement). If we were to construe RSA 231:43, III to provide any owner of land with a right to use a discontinued highway, even if the highway is one of many ways of accessing the owner's property, the statute would unnecessarily infringe upon the real property rights of the owners of the land underlying the discontinued highway. See Burrows, 121 N.H. at 597. To avoid conflict with constitutional rights, the statute must be construed so as to infringe upon the fundamental property

4

rights of the owners of the land underneath the discontinued highway only to the extent necessary to protect the fundamental property rights that other landowners may have to access their property.

Consistent with the plain meaning of the statutory language and with our obligations to construe the statute as constitutional, we conclude that the phrase "deprived of access" refers to a landowner's <u>reasonable</u> means of ingress and egress. Thus, under the statute, a right of access over a discontinued highway does not exist unless it is reasonably necessary for a landowner's ingress and egress.

We note that our construction of the statute is consistent with the common law. In <u>Shearer</u>, we recognized that, at common law, "a landowner whose property ha[d] no frontage on a public highway ha[d] an easement over an abutting discontinued highway to access the landowner's property" provided that the easement was "reasonably necessary for ingress and egress." <u>Shearer</u>, 174 N.H. at 32, 37. The landowner in <u>Shearer</u> owned property that lacked frontage on Whipple Hill Road, a public highway, and abutted Bowker Road, a public highway that had been discontinued in 1898. <u>Id</u>. at 27. Because Bowker Road had been discontinued long before 1943, when the legislature first codified a right of access over discontinued highways, <u>see</u> Laws 1943, 68:2, we had to decide whether a right of access had existed at common law. <u>Shearer</u>, 174 N.H. at 31, 32.

We explained that "to have reasonable access for ingress and egress" is "an important property right," incidental to land ownership. <u>Id</u>. at 34. We held that "[b]ecause, absent a statutory right of access as first codified in 1943, the discontinuance of a highway could leave a landowner without reasonable means to access the property, . . . an easement exists over a discontinued highway when the easement is reasonably necessary for access." <u>Id</u>. We further held that a landowner need not show that the landowner has "no other means of access" to establish that an easement over a discontinued highway is "reasonably necessary for ingress and egress." <u>Id</u>. at 33, 37. Rather, the landowner need show only that "the alternative access imposed measurable hardship that was unreasonable under the circumstances." <u>Id</u>. at 33 (quotation omitted).

Whether an easement is reasonably necessary for ingress or egress presents a question of fact. <u>Id</u>. We similarly conclude that whether a statutory right of access is reasonably necessary for ingress or egress presents a question of fact.

In <u>Shearer</u>, we vacated the trial court's ruling that the plaintiff had a common law easement across the defendants' property to access his property and remanded for the court to determine, in the first instance, whether such an easement was "reasonably necessary for ingress or egress to his land." <u>Id</u>.

5

at 28-29, 37. In this case, we need not remand for the trial court to make the determination in the first instance because we may decide the issue as a matter of law based upon the undisputed facts and the record before us. See Augur v. Town of Strafford, 158 N.H. 609, 614 (2009) ("Ordinarily, we will remand unresolved factual issues for analysis . . . , unless the record reveals that a reasonable fact finder necessarily would reach a certain conclusion, in which case we may decide the issue as a matter of law.").

Here, as a matter of law, the alternative access does not impose "measurable hardship" on Bellevue "that [is] unreasonable under the circumstances." Shearer, 174 N.H. at 33 (quotations omitted). Even without McMillan Lane, Bellevue has ample access to its property from Route 302 via a private road, which connects to the private section of Common Court, and from North-South Road via a public road that connects to the public section of Common Court. Bellevue Props., 173 N.H. at 512. A recorded easement allows Bellevue to travel over the private road and the private section of Common Court to access its property. Id. Moreover, the new private road (that has yet to be constructed) will, like McMillan Lane, enable public access to Bellevue's property from Route 302 to the public section of Common Court via Barnes Road. Id. And as explained above, the planning board has required 13 Green Street to "substantially complete and open to public use" the new road "prior to closure of McMillan Lane." Id. at 514. Under these circumstances, as a matter of law, even without McMillan Lane, Bellevue has "adequate and reasonable" access to its property. Mason v. State, 656 P.2d 465, 469 (Utah 1982) (quotation omitted), superseded by statute as stated in Falula Farms, Inc. v. Ludlow, 866 P.2d 569, 571-72 (Utah Ct. App. 1993); see Shearer, 174 N.H. at 32-33 (citing Mason with approval). Therefore, as a matter of law, a right of access over McMillan Lane is not reasonably necessary for Bellevue's ingress and egress to its property. Accordingly, we uphold the trial court's determination that Bellevue cannot assert a statutory right of access over McMillan Lane pursuant to RSA 231:43, III.

Affirmed.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

6