Hillsborough-southern judicial district
No. 2002-552

LONE PINE HUNTERS' CLUB, INC.

v.

TOWN OF HOLLIS

Argued: May 7, 2003
Opinion Issued: July 2, 2003

*Prunier, Leonard & Prolman, P.A.*, of Nashua (*Andrew A. Prolman* on the brief and orally), for the plaintiff.

*Drescher & Dokmo, P.A.*, of Milford, for the defendant, filed no brief.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Bruce W. Felmly* and *Jennifer L. Parent* on the brief, and *Mr. Felmly* orally), for the intervenors.

BRODERICK, J. The intervenors, an association known as "Residents Defending Their Homes" and various individual residents of Hollis (Residents), appeal from the order of the Superior Court (*Hampsey*, J.) vacating two decisions of the zoning board of adjustment (ZBA) in the Town of Hollis (town), the defendant. The first ZBA decision denied the appeal of the plaintiff, the Lone Pine Hunters' Club, Inc. (Club), from a decision of the town's board of selectmen requiring it to apply for a special exception. The second ZBA decision granted the Club's request for a special exception. We reverse and remand.

The record supports the following facts. In 1966, the Club purchased approximately 118 acres of land in Hollis located in two zones, a residential and agricultural district and a recreational district, and applied for a certificate of occupancy to use the property as a fish and game club and to build an addition to an existing structure. The town building inspector

denied the application on the ground that the proposed use of the property was contrary to the town zoning ordinance and required the Club to obtain a variance. Ten days after the building inspector issued his decision, three members of the ZBA signed an unaddressed, handwritten note, which stated, "It is the opinion of the [ZBA] that the building inspector can issue a building permit for the addition to the existing building owned by the [Club] without issuing a variance."

Over the years, the Club obtained various building permits to add facilities to the property, and in 1998, the Club obtained planning board approval and a special exception from the ZBA to construct a new clubhouse and septic system on the property. Following complaints from the Club's neighbors, the town's board of selectmen wrote to the Club in August 1999 and advised it that, although the 1966 zoning ordinance had required the Club to secure a variance to use the property as a fish and game club, it had never done so. The letter noted that, pursuant to amendments to the zoning ordinance adopted in 1999, the Club's use of the property could be approved as a special exception. The board of selectmen wrote to the Club again in June 2000, advising it that they would issue a cease and desist order unless the Club applied for a special exception and presented a site plan to the planning board depicting the nature of the Club's entire operation.

In August, the Club applied for a special exception. It also appealed the board of selectmen's June letter. The ZBA consolidated the two matters and denied the Club's appeal of the board of selectmen's June letter, finding that "[i]n 1966, a variance was not issued for the proposed use of the land [and] the ZBA determined that no variance was required for the addition to the existing building." The ZBA then granted the Club's application for a special exception. The Club moved for rehearing in both matters, which the ZBA denied. It then appealed to the superior court, which vacated the ZBA's decisions.

Based upon its review of the record, the court found that the 1966 note signed by three ZBA members constituted a decision that the Club's proposed use of the property was permitted under the 1966 zoning ordinance without the need for a variance. The court further found that the Club did not need a special exception under the current zoning ordinance unless it sought to change or expand its use of the property. Accordingly, the court ruled that the ZBA erred by upholding the board of selectmen's decision requiring the Club to obtain a special exception and by granting the Club's request for a special exception. This appeal followed.

We will uphold the superior court's decision on appeal unless it is unsupported by the evidence or legally erroneous. *Morgenstern v. Town of Rye*, 147 N.H. 558, 565 (2002). "For its part, the trial court, in reviewing

the decision of a zoning board of adjustment, is limited to a determination of whether, on the balance of the probabilities, the decision was unlawful or unreasonable." *Peabody v. Town of Windham,* 142 N.H. 488, 492 (1997) (quotation omitted); *see* RSA 677:6 (1996). "To the extent the ZBA made findings upon questions of fact properly before the court, those findings are deemed *prima facie* lawful and reasonable." *Morgenstern,* 147 N.H. at 565; *see* RSA 677:6. "[T]he review by the superior court is not to determine whether it agrees with the zoning board of adjustment's findings, but to determine whether there is evidence upon which they could have been reasonably based." *Hussey v. Town of Barrington,* 135 N.H. 227, 231 (1992).

The Residents contend that the trial court exceeded its authority by impermissibly substituting its own factual determinations for those of the ZBA. We agree. The pivotal issue before the ZBA was whether, in 1966, it decided that the Club did not need a variance to use the property as a fish and game club, or whether it merely decided that the Club did not need a variance to build a proposed addition. Because the parties have not argued otherwise, we assume without deciding that the nature of the ZBA's 1966 decision presented a factual, not a legal, question. If the ZBA ruled that the Club's use of the property did not require a variance in 1966, then the Club did not need a special exception in 2000 to continue that use. By contrast, if the ZBA ruled only that the Club did not need a variance to build an addition, then pursuant to the 1999 amendments to the zoning ordinance, the Club needed a special exception to continue its use of the property.

 Following extensive hearings, the ZBA determined that it did not decide in 1966 that use of the property as a fish and game club was lawful. Rather than review this factual finding to determine whether there was evidence upon which it "could have been reasonably based," the trial court considered the evidence *de novo.* This was error. Ordinarily, we would end our analysis here. Because we have before us the same record that was available to the trial court, however, we will address whether it supports the ZBA's factual determinations regarding the ZBA's actions in 1966. *See Appeal of Savage,* 144 N.H. 107, 110 (1999).

The evidence before the ZBA about its 1966 actions was conflicting. The documents from 1966 were ambiguous. The handwritten note signed by three ZBA members, for instance, indicated only that these members believed that the building inspector could issue a permit to the Club without a variance. One of the members of the 1966 ZBA, Dr. W. Boyd Weston, who signed the unaddressed, handwritten note, testified that the

ZBA intended the note to be a decision that the Club's proposed use of the property was lawful. Weston's hearing testimony, however, conflicted with his deposition testimony given the day before. His hearing testimony also differed from that of Richard Walker, a 1966 town selectman. It was the proper function of the ZBA to resolve this conflicting evidence, not the trial court's. *See Nestor v. Town of Meredith*, 138 N.H. 632, 636 (1994). In light of the conflicting evidence before the ZBA, we cannot say that its factual findings with respect to its 1966 actions were either unreasonable or unsupported by the evidence. *See id.*

Because the trial court vacated both ZBA decisions at issue based upon its own factual determinations concerning the import of the ZBA's 1966 actions, we reverse and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.