Belknap
No. 2003-398

SUMMA HUMMA ENTERPRISES, LLC d/b/a MB TRACTOR

v.

TOWN OF TILTON & a.

Argued: March 11, 2004
Opinion Issued: May 24, 2004

76

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Scott H. Harris* on the brief and orally), for the plaintiff.

*Barto and Puffer, P.A.*, of Concord (*Mark H. Puffer* on the brief and orally), for the defendants.

DUGGAN, J. The plaintiff, Summa Humma Enterprises, LLC d/b/a MB Tractor, appeals an order of the Superior Court (*Smukler*, J.) upholding the denial of its application to amend its site plan by the defendants, Town of Tilton and Town of Tilton Planning Board (board). We affirm.

The following facts were found by the trial court or are evident from the record. The plaintiff is a commercial business engaged in heavy equipment sales and service. The business is located approximately one-half mile west of the intersection of Interstate 93 and Route 3 in a commercial zoning district in Tilton. The plaintiff, seeking to install a ninety-foot flagpole to fly a 960 square-foot American flag, filed an application to amend its site plan with the board.

At a December 3, 2002 public hearing, the board reviewed the plaintiff's application. The board's regulations set forth the purposes served by site plan review, which govern the board's review of site plans. The purposes are:

> a. To provide for the safe and attractive development . . . of the site and to guard against such conditions as would involve danger or injury to health, safety, or prosperity by reason of:
>
> . . .
>
> (3) Undesirable and preventable elements of pollution such as noise . . .

. . . .

b. To provide for the harmonious and aesthetically pleasing development of the municipality and its environs; [and]

. . . .

h. To include such provisions as will tend to create conditions favorable for health, safety, convenience and prosperity.

Based on these regulations, the board noted the following concerns with the plaintiff's site plan: (1) the required lighting of the flag at night; (2) a ninety-foot flagpole would exceed the zoning ordinance's height limitations on buildings; (3) the noise associated with the flag in windy conditions; (4) the safety concerns from ice falling or the pole itself falling; and (5) improper use of the flag for advertising.

The board directed several questions to the plaintiff's representatives, Chris Rice and Jason Kahn. Mr. Rice was unable to answer the board's questions about the size of the pole, the effect on the neighborhood of the required lighting and the potential noise.

In answering why a ninety-foot flagpole was required, Mr. Kahn first stated the purpose was to draw awareness to the flag. The board's minutes also reflect that "Mr. Kahn stated [the plaintiff] was trying to develop a brand presence. [The plaintiff] was trying to develop this brand as one identity and a 90 foot flag was one of his identities." In addressing the safety and noise concerns, Mr. Kahn stated that the manufacturer could provide information about the noise generated by flags flying in the wind and that the flagpole would be "fully engineered." He also stated that ice would not adhere to the flag and that the pole was tapered.

The board approved the proposal conditioned on a height restriction of fifty feet, the same height restriction in the town's zoning ordinance for buildings. The board imposed the height restriction based upon concerns about safety, noise and aesthetics.

The plaintiff appealed the board's decision to the superior court. Following a hearing, the trial court noted that the plaintiff's first representative was unable to answer the board's questions and that the second representative, while able to answer some of the board's questions, was unable to offer documentation to support his answers and offered contradictory information regarding the purpose of the flag. Thus, the trial court found that the board "reasonably determined that the [plaintiff] failed to sustain its burden of addressing its concerns about safety, noise, and the effect on the area aesthetics of lighting [the flag and flagpole.]" Accordingly, the trial court concluded that the plaintiff "failed to sustain

its burden of showing that the board's decision was unreasonable or unlawful."

On appeal, the plaintiff argues that the trial court erred because it: (1) upheld the board's decision, which was "unreasonable and unlawful"; and (2) declined to consider an affidavit that was not submitted to the board. We address each argument in turn.

The plaintiff first argues that the superior court erred in upholding the board's decision because there is no ordinance that precludes the installation of a ninety-foot flagpole. The plaintiff points to the zoning ordinance's specific height limitation for buildings to argue that the lack of a controlling statute or ordinance regulating the height of flagpoles precludes the board from denying the application to amend the site plan. We disagree.

■ Site plan review is designed to insure that uses permitted by a zoning ordinance are "constructed on a site in such a way that they fit into the area in which they are being constructed without causing drainage, traffic, or lighting problems." 15 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LAND USE PLANNING AND ZONING § 30.01, at 425 (2000). Site plan review is also "designed to assure that sites will be developed in a safe and attractive manner and in a way that will not involve danger or injury to the health, safety, or prosperity of abutting property owners or the general public." *Id.* § 30.02, at 427. These purposes are "accomplished by subjecting the plan to the very expertise expected of a planning board in cases where it would not be feasible to set forth in the ordinance a set of specific requirements upon which a building inspector could readily grant or refuse a permit." *Id.*

■ Site plan review, however, is limited. It "does not give the planning board the authority to deny a particular use simply because it does not feel that the proposed use is an appropriate use of the land. Whether the use is appropriate is a zoning question." *Id.* § 30.09, at 437. Nevertheless, the board has authority under site plan review to impose requirements and conditions that are reasonably related to land use goals and considerations within its purview. *See Nestor v. Town of Meredith*, 138 N.H. 632, 635 (1994); LOUGHLIN, *supra* § 30.09, at 438 (noting that the board "can and must condition approval upon installation of landscaping, curbing, and drainage facilities or other items which will make the proposed building fit into the area").

■ Here, the board approved the plaintiff's proposed flagpole with a fifty-foot height restriction. The board did not prohibit the plaintiff from using the property in a manner allowed by the zoning ordinance. Rather, it

cited concerns with the safety, noise and aesthetics of the flagpole and conditioned the plaintiff's authorized use of the property to ensure that it was "developed in a safe and attractive manner" and would not involve "danger or injury to the health, safety, or prosperity of abutting property owners or the general public." LOUGHLIN, *supra* § 30.02, at 427. Where the role of site plan review is to ensure that uses permitted by the zoning ordinance are appropriately designed and developed, restricting the board's authority to the specific limitations imposed by ordinances and statutes would render the site plan review process a mechanical exercise. The planning board properly exercised its authority to impose conditions that are reasonably related to the purposes set forth in the site plan regulations; namely, the "safe and attractive development" of the site. Therefore, the superior court did not err in upholding the board's decision.

The plaintiff next argues that the superior court erred in upholding the board's decision because the board had no evidence regarding the potential noise created by the flag or the existence of safety concerns from the flagpole falling over or ice falling from it. We disagree.

 Superior court review of decisions of planning boards is limited. *Bayson Properties v. City of Lebanon*, 150 N.H. 167, 170 (2003). The superior court is obligated to treat the factual findings of the planning board as *prima facie* lawful and reasonable and cannot set aside its decision absent unreasonableness or an identified error of law. *Id.* The appealing party bears the burden of persuading the trial court that, by the balance of probabilities, the board's decision was unreasonable. *Id.* at 169. The review by the superior court is not to determine whether it agrees with the planning board's findings, but to determine whether there is evidence upon which they could have been reasonably based. *Lone Pine Hunters' Club v. Town of Hollis*, 149 N.H. 668, 670 (2003). Where, however, the applicant for site plan review does not provide sufficient information upon which the board can apply the site plan regulations, it is proper for the board to deny the site plan application. *See* 5 A. H. RATHKOPF & D. A. RATHKOPF, RATHKOPF'S THE LAW OF ZONING AND PLANNING § 87:10, at 87-18 to 87-19 (2003).

Our review of the superior court's decision is equally deferential. *See Lone Pine Hunters' Club*, 149 N.H. at 669. We will uphold the decision on appeal unless it is unsupported by the evidence or legally erroneous. *Id.*

 Here, the superior court noted that the inquiry is "whether the [plaintiff] presented sufficient evidence to the board to sustain its burden and, if so, whether that evidence was sufficient to compel a finding in its favor." The only evidence presented to the board was the testimony of the plaintiff's representatives, Mr. Rice and Mr. Kahn. Mr. Rice was unable to

address any of the board's concerns. Although Mr. Kahn stated that the manufacturer could provide information about the noise from the flag and the engineering of the flagpole, he did not provide any documentation addressing the noise, safety or lighting concerns. Based on this record, the superior court did not err in holding that "the board reasonably determined that the [plaintiff] failed to sustain its burden of addressing its concerns about safety, noise, and the effect on the area aesthetics of lighting [the flag and flagpole]."

Finally, the plaintiff argues that the superior court erred when it declined to consider an affidavit that was not submitted to the board. We disagree.

█ RSA 677:15, III entitles the trial court "*at its discretion*, to consider additional evidence when it shall appear necessary." *Star Vector Corp. v. Town of Windham*, 146 N.H. 490, 492 (2001) (quotation omitted). It is the trial court's prerogative to determine whether admission of further evidence would advance justice or judicial economy. *Mt. Valley Mall Assocs. v. Municipality of Conway*, 144 N.H. 642, 656 (2000). We review trial court decisions in this context for an unsustainable exercise of discretion. *See Star Vector Corp.*, 146 N.H. at 492; *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

█ Here, the superior court's role was to determine whether there was evidence upon which the board could have reasonably based its decision. *See Lone Pine Hunters' Club*, 149 N.H. at 670. In making this determination, the court reviewed the certified record, which contained the materials before the board. The court also considered pleadings and argument of counsel. Because the trial court is in the best position to determine the sufficiency of the record before it, and based on the record in this case, we cannot conclude that the superior court committed an unsustainable exercise of discretion. *See Mt. Valley Mall Assocs.*, 144 N.H. at 656.

*Affirmed.*

BRODERICK, DALIANIS and GALWAY, JJ., concurred; NADEAU, J., dissented.

NADEAU, J., dissenting. I cannot join in today's holding, because I believe the planning board acted unreasonably in failing to afford the plaintiff a meaningful opportunity to address its concerns. *See Richmond Co. v. City of Concord*, 149 N.H. 312, 314 (2003).

In this case, the planning board meeting was held on December 3, 2002. The minutes of that meeting reflect that the board peppered the plaintiff and its representative with questions and voiced concerns regarding the noise, safety, and aesthetics of the plaintiff's flagpole. For example, board member Katherine Dawson "wondered if [the flag] wouldn't be noisy." Another board member, Michelle Jackson, noted, "she didn't feel the residents would want to see a flag the size of their homes or hear the noise it would make during windy conditions." Sandy Plessner, another board member, "asked what one would do if the flag became covered with ice and it were to get windy. [She] stated the ice could break off and fall to the ground." Ms. Dawson "stated the possibility existed for a flag pole to fall over in an ice storm." At the close of public comment, the board approved only a fifty-foot flagpole. The following day, the board issued its notice of decision. The superior court affirmed the ruling, noting that the plaintiff "failed to sustain its burden of addressing [the board's] concerns about safety, noise, and the effect on the area aesthetics."

I disagree with the superior court's ruling, as it ignores the reasons why the plaintiff failed to meet its burden the night of the board meeting in the first instance. First, at the time the plaintiff sought site plan approval, no zoning regulation prohibited the installation of a flagpole, nor had any restriction been enacted by the board limiting the height of flagpoles to fifty feet. Given that the plaintiff's proposal was not subject to any particular zoning or planning regulation, I cannot, unlike the majority, fault the plaintiff for being ill-prepared to answer the board's flagpole concerns the night of the meeting.

Second, especially when, as here, the concerns of the board are wholly speculative, the plaintiff should have been afforded more time to respond. To hold otherwise requires applicants for site plan review to anticipate and answer the whims of each board member in order to ensure that their proposals are approved. I find this result untenable, because the review process does not confer unfettered discretion upon local planning boards. 15 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LAND USE, PLANNING AND ZONING § 30.09, at 437 (2000). As the majority recognizes, the authority to conduct site plan review "does not give the planning board the authority to deny a particular use simply because it does not feel that the proposed use is an appropriate use of the land." *Id.* Indeed, "[i]f the planning board could deny uses it thought to be inappropriate," zoning would become obsolete, as it would "afford no protection to a landowner." *Id.* Accordingly, the musings of individual board members must be tempered by a meaningful opportunity for applicants to respond if site plan review is not to degenerate into a wholly discretionary review process in which the

unanticipated speculation of board members is permitted to justify its decision.

As such, I would not penalize the plaintiff for being unable to answer the issues raised by the board members during the meeting. Rather, I believe the board should have afforded the plaintiff more time to respond to its concerns before acting upon the site plan. That the plaintiff may not have requested more time to redress the board's concerns is of no import. As we have previously recognized, in furtherance of Part I, Article 1 of our State Constitution, municipalities have an obligation to provide assistance to all their citizens seeking board approval. *Richmond*, 149 N.H. at 314-15; *see also Savage v. Town of Rye*, 120 N.H. 409, 411 (1980). This measure of assistance certainly includes informing applicants not only whether their applications are substantively acceptable but also whether they are technically in order. *Savage*, 120 N.H. at 411. I would also include the duty to provide applicants with sufficient time to respond to the board's concerns.

I would remand the petition to the board so that the plaintiff would have the opportunity to address its flagpole concerns. Therefore, respectfully, I dissent.