Carroll
No. 2008-632

## MOTORSPORTS HOLDINGS, LLC

### v.

### TOWN OF TAMWORTH

Argued: October 7, 2009
Opinion Issued: April 9, 2010

*Devine, Millimet & Branch, P.A.*, of Manchester (*Thomas Quarles, Jr.* and *Kevin M. Baum* on the brief, and *Mr. Quarles* orally), for the petitioner.

*Rath, Young and Pignatelli, P.C.*, of Concord (*Andrew W. Serell* on the brief and orally), for the intervenors.

BRODERICK, C.J. The intervenors, Amy K. Berrier and other abutters, landowners and residents of Tamworth, appeal the decision of the Superior Court (*Houran*, J.) that vacated and remanded the Town of Tamworth Planning Board's decision to deny the application for a special use permit sought by the petitioner, Motorsports Holdings, LLC (Motorsports). We affirm in part, reverse in part and remand.

I

We draw the facts from the certified record, the trial court's order, and our prior decision in *Anderson v. Motorsports Holdings*, 155 N.H. 491 (2007). Motorsports owns approximately 250 acres of land in the Town of Tamworth. It wishes to build a private country club and motorsports facility, including a "3.1-mile long, European-style road course" and structures to support the repair, servicing, and garaging of racing vehicles, as well as a hotel, restaurant, access road, and parking facilities. Construction would involve dredging and filling 14,759 square feet of wetlands and would affect 16,952 square feet of intermittent streams. In total, construction would affect at least sixteen distinct wetlands areas.

Motorsports has obtained: (1) a dredge-and-fill wetlands permit from the New Hampshire Department of Environmental Services (DES); (2) a site-specific alteration-of-terrain permit from DES; (3) a wetlands permit from the United States Army Corps of Engineers; and (4) a water quality certificate from DES. DES required Motorsports to provide a conservation easement on 107 acres of land in Sandwich to mitigate the negative environmental impacts of the project. Motorsports also had applied for a special use permit, pursuant to Tamworth's Wetlands Conservation Ordinance (WCO); however, it withdrew its application before the Tamworth Planning Board (planning board) had completed its review.

Subsequently, residents from the Town of Tamworth sought a declaratory judgment from the superior court, requesting a ruling that Motorsports would have to obtain a special use permit under the WCO before beginning construction. The court ruled that the Town was a necessary party to the action, and notified the Town that, whether or not it participated, it would be bound by the result. The Town chose not to participate. Later, on summary judgment, the trial court ruled that regardless of Motorsports' acquisition of state and federal permits, it needed to apply for a special use permit under the WCO. Motorsports appealed, arguing, among other things, that because relevant state and federal regulations were more stringent and comprehensive than the WCO, the WCO, by its own terms, was not applicable to the project and, therefore, no special use permit was required. *See Anderson*, 155 N.H. at 494. We rejected this argument and held that Motorsports was obligated to obtain the local permit. *Id.* at 497.

Before our decision was issued, however, Motorsports applied for a special use permit. In its application, Motorsports identified the percentage of wetlands on the entire site that would be affected by the project, stating:

> The Project Site contains a total of 15.14 acres of combined
> wetlands and waterbodies, which represents 6% of the total land

area of the parcel (251 acres). . . . The[] direct impacts [to wetlands caused by the proposed project] result in a total disturbance of approximately 31,711 square feet (0.73 acres) to the [Wetlands Conservation District], which represents approximately 4.8% of the total wetlands and waterbodies identified on-site and approximately one half of which are intermittent or seasonal streams and drainageways.

The application also identified the land area that fell within the 25-foot wetlands buffer zone governed by the WCO:

The total area of site within the 25-foot buffer to wetlands encompasses approximately 10.3 acres. The Project layout presented herein has been designed to minimize impacts to the 25-ft buffer to approximately 2.1 acres (20.4%). These buffer zone impacts are primarily associated with the grading of roads, access ways, and parking areas. There are no buildings of [sic] subsurface sewage disposal systems located within the 25-foot buffer area.

The application also described the design and scope of the proposed project, the particular design efforts intended to protect the wetlands, and the resulting anticipated impacts. It itemized seventeen wetland impact areas, describing (1) the nature of the existing wetland, (2) the nature of the impact that the proposed project would cause, (3) the particular section of the WCO applicable to each wetlands impact (e.g., access ways, waterways, and other uses), and (4) the particular design of the proposed project intended to minimize a direct impact to the affected wetland areas.

Both the planning board and the Tamworth Conservation Commission (TCC), including its Wetlands and Subsurface subcommittee (TCC subcommittee), reviewed the application at a series of meetings during the fall of 2006. In an effort to address concerns raised by the TCC, Motorsports presented an amended plan to the planning board on September 27. Some of the changes increased impacts to buffer zones. The planning board conducted public hearings on October 17 and November 1. During the planning board review process, Motorsports had an opportunity to make detailed presentations of its proposed project, the TCC presented its recommendation to deny the application, and members of the public presented their concerns. At the end of the November 1 hearing, the planning board concluded the public hearing portion of the review process, and Motorsports offered to propose conditions to the special use permit it was seeking. On November 6, the planning board conducted a site walk.

On November 8, the planning board voted to deny Motorsports' application for the permit, deciding that the proposed project did not meet five of seven Section A criteria under the WCO. Motorsports appealed to the superior court, which granted leave to certain abutters and residents of Tamworth to intervene, including the appealing intervenors before us. The trial court conducted a hearing in June 2008, during which one witness, the president of Motorsports, testified and the parties presented offers of proof and legal argument. Subsequently, the trial court vacated the planning board's decision and remanded the matter. It declined to reach certain procedural issues. The intervenors appealed to this court, and Motorsports cross-appealed.

## II

The trial court's review of the planning board's decision was governed by RSA 677:15, V (Supp. 2009), which provides that the trial court "may reverse or affirm, wholly or partly, or may modify the decision brought up for review when there is an error of law or when the court is persuaded by the balance of probabilities, on the evidence before it, that said decision is unreasonable." The trial court's review is limited:

> [It] must treat the factual findings of the planning board as *prima facie* lawful and reasonable and cannot set aside its decision absent unreasonableness or an identified error of law. The appealing party bears the burden of persuading the trial court that, by the balance of probabilities, the board's decision was unreasonable. The review by the superior court is not to determine whether it agrees with the planning board's findings, but to determine whether there is evidence upon which they could have been reasonably based.

*Upton v. Town of Hopkinton*, 157 N.H. 115, 118 (2008) (citations omitted); *see also* RSA 677:15, V. We will uphold a trial court's decision on appeal unless it is unsupported by the evidence or legally erroneous. *Upton*, 157 N.H. at 118.

In this case, the trial court did not reach the issue of whether there was sufficient evidence upon which the planning board could reasonably deny Motorsports' application for a special use permit. Rather, the trial court vacated the planning board's decision and remanded after concluding that the board committed three errors of law. First, it concluded that the planning board erred in voting on the project as a whole by applying the Section A criteria under the WCO to both the access way and non-access way impact areas. Second, it concluded that by voting on the project as a

whole, the planning board failed to provide guidance to the petitioner in violation of its constitutional obligation to do so under Part I, Article 1 of the State Constitution. Third, it concluded that the planning board erred in failing to determine whether and where the WCO is more stringent than state and federal regulations as required by our decision in *Anderson*, 155 N.H. at 497-98.

On appeal, the intervenors argue that the trial court erred by: (1) ruling that the planning board failed to provide Motorsports with the measure of assistance required under Part I, Article 1 of the New Hampshire Constitution; (2) ruling that the planning board was required to separately address whether Motorsports was entitled to approval of proposed "access ways"; and (3) compelling the planning board on remand to initially make explicit determinations addressing whether and where the WCO was more stringent than applicable state and federal wetlands regulations. They also contend that we should decide, as a matter of law, that the planning board adequately set forth grounds for denying Motorsports' application as required by RSA 676:4, I(h) (Supp. 2009). In its cross-appeal, Motorsports argues that the trial court erred by failing to address whether the planning board illegally deliberated and rendered a final vote at the November 8 meeting that had been publicly noticed only as a work session. It also contends that the trial court erred by failing to find that the planning board did not provide an adequate statement of the grounds for disapproving the application for a special use permit as required under RSA 676:4, I(h).

### III

We begin with an overview of the relevant portions of the WCO. The ordinance sets forth a regulatory permitting scheme that governs the use of and impact on wetlands in the Town of Tamworth; it does not regulate zoning. *Cf. Summa Humma Enters. v. Town of Tilton*, 151 N.H. 75, 78 (2004) (whether the proposed use is an appropriate use of land is a zoning question). The ordinance was established "to regulate the uses of lands subject to standing water, flooding, or high water tables for extended periods of time." TAMWORTH WCO "Title and Authority." In particular, the ordinance regulates the "wetlands conservation district," which includes "wetlands," "waterbodies," and their adjacent buffer zones. *Id.* art. C, art. B.8, art. B.10, art. F.

Some activities and uses within the wetlands conservation district require a special use permit while others do not. *See id.* art. D, art. E. With respect to special use permits, the WCO provides in part:

> 1. Special Use Permits may be issued by the Board, after proper public notice and public hearing, for undertaking the following

uses in the Wetlands Conservation District when the application has been referred to the Commission and to the Health Officer for review and comment at least thirty (30) days prior to the hearing.

. . . .

(a) Streets, roads, and other access ways, utility right-of-way easements, including power lines and pipe lines, if so located and constructed as to minimize any detrimental impact to such uses upon the wetland.

(b) Water impoundments for the purposes of creating a waterbody for wildlife, on-site detention of surface runoff, fire protection, and/or recreational uses.

(c) The undertaking of a use not otherwise permitted in the Wetlands Conservation District, if it can be shown that such proposed use is not in conflict with any and all of the purposes and intentions listed in Section A of this ordinance.

*Id.* art. E (italics, parentheses, and asterisks omitted). In reviewing an application for a permit that implicates any of these three categories of special uses, the planning board is required to consider certain facts and circumstances, including, "the effects on the wetland's capacity to . . . prevent flooding, . . . [and] control sediment . . . ." *Id.* art. E.5(a). However, when considering the propriety of a proposed special use under the third category, that is, a use that is "not otherwise permitted," an applicant also must show that the proposed use does not conflict with the purposes and intentions listed in Section A. *Id.* art. E.1(c). That section, in turn, provides:

A. Purpose and Intent

The purpose of this Ordinance is to protect the public health, safety and general welfare by controlling and guiding the use of land areas which have been found to be subjected to standing water, flooding, high water tables for extended periods of time.

It is intended that this Ordinance shall:

1. Prevent the development of structures and land uses on naturally occurring wetlands which will contribute to pollution of surface and ground water by sewage, sediment, or noxious substances.

2. Prevent the destruction of, or significant changes to natural wetlands which provide flood protection.

3. Protect rare, unique, and unusual natural communities, both floral and faunal.

4. Protect wildlife habitats and maintain ecological balances.

5. Protect potential water supplies and existing aquifers (water-bearing stratum) and aquifer recharge areas.

6. Prevent expenditure of municipal funds for the purposes of providing and/or maintaining essential services and utilities which might be required as a result of misuse or abuse of wetlands.

7. Encourage those low-intensity uses that can be harmoniously, appropriately and safely located in wetlands.

*Id.* art. A (italics, parenthesis, and asterisk omitted). We observe that some overlap exists among the review standards applicable to all proposed special uses under subsection E.5 and the Section A requirements that apply to the "not otherwise permitted" special use category. Additionally, the wetlands ordinance provides: "Where any provision of this ordinance is in conflict with State or Federal law or regulation, or other Town ordinance, the more stringent provision shall apply." *Id.* art. I. Within this framework, we now address the parties' arguments.

## IV

■ We turn first to a request, made by both parties, that we reach an issue the trial court declined to address; namely, whether the board adequately provided grounds for its decision in accord with RSA 676:4, I(h). The trial court concluded that it was unnecessary to decide this statutory issue because it vacated the planning board's decision on other grounds and determined that the statutory issue was not likely to arise on remand. The statutory issue is similar to the issue raised by the intervenors regarding the measure of assistance required under Part I, Article 1 of the State Constitution. Because we decide cases on constitutional grounds only when necessary, *see Hughes v. N.H. Div. of Aeronautics*, 152 N.H. 30, 35 (2005), we address the statutory issue and decline to address the constitutional issue.

■ The parties agree that in denying the special use permit application, the planning board was required to comply with RSA 676:4, I(h), which

provides: "In case of disapproval of any application submitted to the planning board, the ground for such disapproval shall be adequately stated upon the records of the planning board." This statutory requirement compels the planning board to "sufficiently apprise [an applicant] of the planning board's reasoning and provide an adequate record of the board's reasoning for us to review on appeal." *Route 12 Books & Video v. Town of Troy*, 149 N.H. 569, 575 (2003). Compelling planning boards to adequately state grounds for disapproval therefore anticipates an express written record that sufficiently apprises an applicant of the reasons for disapproval and enables "a reviewing authority [to] hold the board accountable." *Patenaude v. Town of Meredith*, 118 N.H. 616, 619 (1978) (decided under former statute); *see also K & P, Inc. v. Town of Plaistow*, 133 N.H. 283, 290 (1990) (decided under current statute). Thus, we have noted that planning boards "should fully discuss [the] reasons for [disapproving an application] in the board meeting minutes." *Patenaude*, 118 N.H. at 619.

A written denial letter combined with the minutes of a planning board meeting can satisfy the statutory requirement under RSA 676:4, I(h). *See, e.g., Star Vector Corp. v. Town of Windham*, 146 N.H. 490, 494 (2001) (planning board issued detailed denial letter which provided multiple reasons for disapproval, and minutes reflected board's specific concern with applicant's proposed control regarding release of hazardous substance); *K & P, Inc.*, 133 N.H. at 288 (planning board issued general denial letter, but minutes reflected that board disapproved proposed plan due to safety concerns associated with a long, dead-end road); *Route 12 Books & Video*, 149 N.H. at 575 (planning board issued a written letter that unequivocally identified three distinct reasons for denying the application, and minutes reflected extended discussion on each reason given in the letter). Ultimately, whether planning board records "adequately state[]" the ground for disapproval in accord with RSA 676:4, I(h) depends upon the particular case. *See Patenaude*, 118 N.H. at 620.

In this case, the planning board apparently did not issue a written decision that outlined its reasons for denying Motorsports' application for a special use permit. *But see* RSA 676:3, I (Supp. 2009) (local land use board shall issue a final written decision which either approves or disapproves an application for a local permit); TOWN OF TAMWORTH PLANNING BOARD RULES OF ADMINISTRATIVE PROCEDURE § 5.K ("Notice of decision using Appendix D.2 or D.3 will be made available for public inspection at the Town Office building within 72 hours after the decision is made, as required by RSA 676:3."). A written decision is not included in the certified record, and the intervenors do not contest Motorsports' assertion that the planning board did not provide it with one. Rather, the intervenors argue that the

November 8 minutes constitute an adequate statement of the planning board's reasons for disapproving Motorsports' application for a special use permit in accord with RSA 676:4, I(h). We disagree.

As an initial matter, we observe that the certified record forwarded to us by the planning board includes a copy of the minutes of the November 8 meeting that contains gaps. We also received a spiral binder titled "Index to Intervenors' Supplemental Certified Record," which includes a copy of the November 8 minutes purporting to be a "complete set," but which is marked "draft" on top of the first page. This same "draft" copy is included in the intervenors' appendix on appeal, and, on its face, it is more inclusive than the written minutes provided in the certified record transferred to us from the planning board. Additionally, Motorsports included in its appendix a document that purports to be a transcript of the November 8 meeting, but it is not certified and, thus, we will not review it. *See generally* SUP. CT. R. 15. For our purposes, therefore, we consider the November 8 minutes in the certified record, as well as the more complete "draft" minutes which the intervenors included in the appeal record without objection from Motorsports. The certified record also includes a DVD recording of the November 8 meeting, which the trial court reviewed in rendering its decision on the merits. However, because we issued an order on January 23, 2009, instructing the parties that we would not review DVD recordings of planning board meetings absent a transcript, we will not consider the DVD recording of the November 8 meeting.

Turning to the merits of whether the planning board adequately provided grounds for its decision, we conclude that the November 8 minutes reveal two significant legal flaws. First, the minutes demonstrate that the board members were not clear on how the WCO applied to Motorsports' application for a special use permit. The special use permit application relates to numerous wetland impact areas and buffer zones in the context of a large and complicated project. Also, the wetland impact areas apparently consist of a relatively small portion of the project site and implicate different sections of the WCO for access way and non-access way impacts. At the start of the November 8 planning board meeting, town counsel made an introductory statement outlining a review procedure in which the board would take into account the different sections of the ordinance relevant to the wetland impacts outlined in Motorsports' special use permit application. The minutes characterize town counsel's statement as follows:

> The Planning Board will go through the 7 requirements of Section A and if [Motorsports] meets all the requirements then the issue becomes [moot] and we do not have to proceed further. As I see it, if it turns out that [Motorsports] does not meet all of the 7

requirements then we will have another discussion about what requirements they are required to meet.

A number of wetlands are affected by this proposal, 16 or 17 areas, it doesn't make sense from a time frame point of view to deal [with] the 7 requirements for each impact area. We will go through the 7 criteria and if any of the Planning Board has any specific issue with any wetland area then we will discuss that. Other[wise] we will go through the 7 criteria and see if the project meets all of these criteria.

This procedure proposed that the board review the project as a whole in light of the Section A criteria, discuss the necessary requirements to be met should the application fail to meet all criteria, and identify any specific issue the board may have with regard to any particular wetland impact. Without deciding whether the method set forth by town counsel would satisfy the law, the record demonstrates that the planning board did not follow it.

The board voted on each of the seven criteria delineated in Section A of the WCO with respect to the proposed project as a whole and concluded that the application did not satisfy criteria 1, 2, 4, 5, and 7. It is unclear, however, whether the board applied the Section A criteria to all or just some of the impact areas. The minutes reveal that when reviewing the project as a whole, some confusion arose among individual board members as to whether the Section A criteria applied to both the access way and non-access way impact areas identified in the application. The trial court ruled, and the parties agree, that only non-access way impacts are subject to the seven criteria under Section A, and that different criteria apply to access way impacts. It is questionable, however, whether the board agreed as to how the WCO applied. One board member suggested that the Section A criteria applied to both access way and non-access way impacts, while another member opined that Section A does not apply to access way impacts and that "access ways, roads, streets are clearly allowed." Other board members remained silent on this issue. This confusion was not resolved on the record before us. Thus, when the board voted on the project as a whole, it is unknown whether board members applied Section A properly. Some members may have determined that some or all of the impacts failed to meet Section A criteria, without distinguishing between access ways and non-access ways, whereas other members may have denied the application after determining that some or all of the non-access way impacts failed to meet Section A criteria. Therefore, we conclude that the November 8 minutes fail to sufficiently apprise Motorsports of the planning board's reasoning and fail to provide an adequate record of its reasoning to afford meaningful appellate review.

Even assuming the board properly applied the WCO, the manner in which the planning board voted on the project as a whole presents an additional legal flaw reflected in the November 8 minutes. The intervenors argue that casting separate votes on each of the seven Section A criteria constituted an adequate statement for the grounds of disapproval necessary to comply with RSA 676:4, I(h). They contend that the board was not required to "restat[e] the voluminous evidence" and "set forth in detail" the evidence upon which the board relied when voting against five of the criteria. Motorsports contends, however, that the planning board failed to provide reasons for denying the permit in a manner that enabled the superior court to meaningfully review the merits of the board's decision or Motorsports to understand how each of the wetland impacts was deficient.

At the November 8 meeting, the board voted on each of the seven Section A criteria, concluding that the application did not satisfy criteria 1, 2, 4, 5, and 7. The minutes do not reflect which of the at least sixteen wetland impacts or corresponding buffer zones the planning board considered to be problematic with respect to any particular Section A criteria that the board voted was not satisfied. For example, the first criteria under Section A provides that the WCO shall "[p]revent the development of structures and land uses on naturally occurring wetlands which will contribute to pollution of surface and ground water by sewage, sediment, or noxious substances." TAMWORTH WCO, art A.1 (italics, parenthesis and asterisk omitted). The WCO defines "pollution" as "[h]armful thermal effect or the contamination, or rendering unclean or impure of any wetlands . . . by reason of any waste or other materials discharged or deposited therein . . . [including] erosion and sedimentation resulting from any filling or excavation activity." *Id.* art. B.6. Although the minutes reflect some concern about the excavation of retaining walls and footings, and about fill running over culverts, the board did not identify which of the at least sixteen wetland impacts would be unlawfully polluted, or how the fill would constitute "pollution" within the meaning of the WCO. Furthermore, the minutes demonstrate that virtually no discussion occurred prior to the board's vote that Motorsports' application failed to satisfy several other criteria.

■ We reject the intervenors' argument that "[a] reviewing court can clearly determine which criteria the Board found were not satisfied, and can satisfy its role in determining whether there is evidence in the record to sustain the Board's finding on each of these five criteria, under the standards set forth in *Summa Humma Enters.*, 151 N.H. at 79 . . . and [in] *Cherry*, 150 N.H. at 724." (Footnote omitted.) In *Summa*, we stated that in reviewing planning board decisions, the superior court must "determine whether there is evidence upon which [the planning board's findings] could

have been reasonably based." *Summa Humma Enters.*, 151 N.H. at 79. In *Cherry*, we stated that "if any of the [planning] board's reasons for denial of the special use permit support its decision, then the . . . appeal must fail." *Cherry v. Town of Hampton Falls*, 150 N.H. 720, 724 (2004). Application of these standards, however, is based upon the premise that the planning board has made findings that provide an adequate record of the board's reasoning sufficient for a reviewing court to render meaningful review. In neither *Summa* nor *Cherry* did we consider the issue of how to satisfy RSA 676:4, I(h).

Further, we reject the intervenors' suggestion that the superior court was required to comb through the voluminous record to ascertain, if possible, what portion of the proposed project caused which disqualifying wetland impacts. Rather, it was the planning board's statutory responsibility to identify the particular aspects of the proposed project that it found were deficient under the governing WCO criteria and the adversely affected wetland impact areas and buffer zones. Notwithstanding that some aspects of the proposed project, including the construction phase, may affect numerous wetland areas and buffer zones throughout the site, the planning board was required to set forth its reasoning regarding the aspects of the proposed project it found to be deficient in relation to the wetland impacts.

We also reject the intervenors' contention that requiring the board to address each of the wetland impact areas, as well as buffer zones, separately, and consider each requisite criteria for each impact, would impose a "nearly impossible burden" on the planning board and "involve a logistical nightmare of more than a hundred votes." Neither the trial court's ruling nor our holding today compels a particular methodology for the board to implement when reviewing Motorsports' application. We note that minutes of a TCC subcommittee meeting included in the certified record indicate that the subcommittee implemented a process whereby it reviewed distinct wetland impacts, considered the WCO criteria in light of access way and non-access way impacts, and identified some concerns it had with the project. Thus, at a minimum, the TCC subcommittee minutes demonstrate the feasibility of a decision-making method that addresses particular aspects of the project's wetland impacts.

 The intervenors point to the September 12 meeting minutes of the TCC subcommittee to support their claim that Motorsports was advised of the numerous deficiencies in its proposed project. However, Motorsports submitted a revised plan to the planning board after the September 12 TCC subcommittee meeting. Thereafter, a multitude of concerns were expressed at the public hearings on October 17 and November 1, various favorable and

unfavorable aspects of the individual impact areas were discussed by the TCC and its subcommittee, both Motorsports and residents opposing the permit gave detailed presentations on different features of the project design, and the planning board conducted a site walk. When the planning board disapproved the application on November 8, however, it did not indicate whether it agreed with the particular deficiencies that the TCC subcommittee had previously identified or whether Motorsports' revised plan failed to cure any deficiencies previously expressed by the planning board. Moreover, while the WCO requires the TCC to provide comment to the planning board regarding a landowner's application for a special use permit, it is the planning board's duty to consider the evidence and provide an adequate statement of grounds for disapproval.

The intervenors also point to other evidence in the record that they claim established the proposed project's unacceptable impacts on the wetlands as a whole, thereby justifying denial of Motorsports' application. That the intervenors can point to evidence in the record which is supportive of the planning board's decision does not relieve the board of its statutory duty to provide adequate reasoning so as to apprise Motorsports of the deficiencies it found and to provide a record for meaningful appellate review.

■ We underscore the trial court's observations that "[t]his is a large and complicated project with extensive submissions to the Board, and a long history before the Board and State and Federal permitting agencies." Further, the WCO is not a zoning ordinance under which the planning board determines whether a proposed project constitutes an appropriate use of land. Rather, it sets forth a regulatory permitting scheme governing the use of and impact upon wetlands. Thus, the planning board's task is to review the application, and identify any deficiencies it perceives regarding particular wetland impact areas.

■ Under the circumstances of this case, we hold that casting separate votes on each of the seven Section A criteria with respect to the project as a whole, without providing reasons, explanations or findings directed to adversely affected wetland areas or buffer zones, does not constitute an adequate statement for the grounds of disapproval necessary to comply with RSA 676:4, I(h). Because the November 8 minutes do not satisfy RSA 676:4, I(h), we hold that the record supports the trial court's ruling to vacate and remand.

## V

We turn next to the intervenors' argument that the trial court erred when it ruled that the planning board was required to separately address whether Motorsports was entitled to approval of access way impacts

associated with its proposed project. They contend that because the "minimization" criteria necessary for approving access ways "could only be determined with reference to a specific *approvable* project," the board would have been required to address the requested access roads only if the project itself had met the criteria for approval. Thus, according to the intervenors, once the board "voted to deny [a special use permit] for the racetrack project, there was no approvable project" to provide the necessary context for reviewing the proposed access ways.

We conclude that the intervenors misconstrue the trial court's ruling. The trial court did not rule that the planning board was required to vote separately on whether the access way impacts were subject to approval under the WCO. Rather, the trial court determined that the manner in which the board voted on the project as a whole left it unable to meaningfully review the propriety of the board's vote to deny the permit application. The trial court ruled that under the WCO, separate criteria apply to access way and non-access way wetland impacts, and it interpreted the planning board's decision as erroneously applying the access way criteria to the project as a whole. The trial court concluded that, in doing so, the board acted unlawfully and vacated the board's decision, reasoning:

> In its discussion and voting, the Board did not distinguish between the access impact areas and the non-access impact areas. Since the Board applied the intentions listed in Section A to the entire project as a whole, it appears on the face of the record that the Board unlawfully applied the Section A intentions to access areas, and the record leaves the court no way of determining whether this is so and, if so, whether under the correct standard, Section E(1)(a), the access ways would have been approved, or whether application of the correct standard to the access ways would have had an impact on the Board's decision as to the non-access portions of the application.

We conclude that the trial court did not compel the board, on remand, to vote on both the access way impacts and non-access way impacts separately. Rather, it concluded that the board erred by applying the wrong legal criteria to access-way impacts, and as a result the court was unable to meaningfully review the planning board's decision. Whether or not the board is required under the ordinance to separately review the requested access way impacts, even if the non-access way impacts do not satisfy the Section A criteria, is an issue appropriately left for the board to consider in interpreting the WCO since the matter is already subject to remand for the board's failure to provide an adequate statement of grounds for disapproval under RSA 676:4, I(h). *See Trottier v. City of Lebanon*, 117 N.H. 148, 150

(1977) ("The administrative construction of [an] ordinance by the zoning authorities . . . [while] neither conclusive nor binding, . . . is entitled to consideration.").

## VI

The intervenors further argue that the trial court erred when it ruled that the planning board, on remand, must initially make explicit findings as to whether particular provisions of the WCO that are applicable to Motorsports' special use permit application are more stringent than state and federal wetlands regulations. They contend that the trial court's ruling is based upon a misreading of our decision in *Anderson* and puts a "nearly impossible" burden on the planning board. Motorsports contends, however, that our decision in *Anderson* directed the planning board, in accordance with the WCO, to initially determine whether any of the criteria for approval under the ordinance were more stringent than state and federal wetlands regulations. It argues that under RSA 676:4, I(g), the planning board had the authority to hire experts, given the complexity of the task.

The trial court ruled that

in applying the Wetlands Ordinance, the Board did not make any explicit initial determinations as to whether and where the Wetlands Ordinance is more stringent than the State and Federal regulations. *See Anderson*, 155 N.H. at 497-98. The court is mindful that the Board did not have the benefit of the Supreme Court's decision in *Anderson* at the time it considered the petitioner's application, so simply points out for consideration on remand that, in addition to this order, the *Anderson* holding, including its requirement in this regard, controls the Board's review.

We conclude that the trial court misconstrued our holding in *Anderson*.

Central to one issue in *Anderson* was the following provision under the WCO: "Where any provision of this ordinance is in conflict with State or Federal law or regulation, or other Town ordinance, the more stringent provision shall apply." *See Anderson*, 155 N.H. at 497-98. In *Anderson*, Motorsports argued that the relevant state and federal regulations are more stringent and comprehensive than the WCO, and, thus, because it secured the necessary state and federal wetlands permits, the WCO was inoperable by its own terms, obviating the need for Motorsports to seek a special use permit. *Id.* at 497.

■ We rejected Motorsports' argument and held that the WCO did not eliminate the need to acquire a special use permit even if the state and

federal regulations were in conflict with and more stringent than the WCO requirements. *Id.* In construing the stringency provision, we determined that

> if provisions of the WCO conflict with and are less stringent than comparable provisions in state or federal regulations, the more stringent provisions must be satisfied to obtain a special use permit. Nothing in Section I eliminates the requirement to obtain a special use permit when provisions from state or federal regulations are more stringent.

*Id.* We did not address "whether any provisions of the WCO conflict with and are less stringent than provisions of state and federal regulations" because "[e]ven if the respondent identified such provisions of the WCO, [it] would still have to apply for a special use permit." *Id.* at 497-98. While we cautioned that "the Board may not interpret the [applicable WCO] standards . . . illegally or unreasonably in order to support a determination of stringency," *id.* at 498, we did not place any responsibility on the board to initially decide whether any WCO provision was in conflict with and was more stringent than state and federal regulations when reviewing or denying an application for a special use permit. Therefore, the trial court erroneously interpreted the *Anderson* decision as compelling the board on remand to "make explicit initial determinations as to whether and where the Wetlands Ordinance is more stringent than the State and Federal regulations."

## VII

In its cross-appeal, Motorsports asks us to reach a procedural issue that the trial court declined to address. It argues that the trial court erred by failing to rule on whether the planning board illegally deliberated and rendered a final vote in violation of its right to meaningful notice and opportunity to participate in review of its application. In particular, it contends that because the planning board publicly noticed the November 8, 2008 meeting as a "work session" and gave no indication that it intended to deliberate and render a final vote on the application, the board's vote to deny the application must be reversed pursuant to RSA 676:4, IV. The trial court declined to rule on this procedural challenge because it determined that the issue was not likely to arise on remand. We agree and similarly decline to address this argument.

Finally, Motorsports argues that "remand is no longer available" and that we should uphold the trial court's decision by vacating the planning board's denial of its application. It contends that because a

majority of the original planning board members no longer sit on the board, a quorum will not be available to consider the case on remand. This argument is premised on the notion that Motorsports is entitled to the same planning board members to decide the matter on remand, a novel notion for which it fails to provide adequately developed legal argument and legal support. Accordingly, we decline to address its argument. *See Guy v. Town of Temple*, 157 N.H. 642, 657-58 (2008) (judicial review not warranted for sweeping legal assertion that lacked adequately developed argument or legal support).

*Affirmed in part; reversed in part; and remanded.*

DALIANIS, DUGGAN, HICKS and CONBOY, JJ., concurred.