**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2014-0440, <u>Blazingstar Funding, LLC v. Dimitrius Wilson & a.</u>, the court on April 3, 2015, issued the following order:**

Having considered the plaintiff's brief and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We vacate and remand.

The plaintiff, Blazingstar Funding, LLC (Blazingstar), appeals an order of the Superior Court (<u>Brown</u>, J.) denying its request for approval of its purchase of structured settlement annuity payments from the payee, Dimitrius Wilson, by the payor, Allstate Settlement Corp., through the annuity issuer, Allstate Insurance Company. Blazingstar sought the approval, which was unopposed, pursuant to 26 U.S.C. § 5891 (2012).

Section 5891 of the Internal Revenue Code imposes a tax on certain transfers of structured settlement annuities, unless the transfer is approved pursuant to a "qualified order." <u>See</u> 26 U.S.C. § 5891(a) & (b). A "qualified order" includes a final court order that:(1) is issued "under the authority of an applicable State statute by an applicable State court"; (2) finds that the transfer is not contrary to any federal or state statute, court order, or order of a "responsible administrative authority"; and (3) finds that the transfer "is in the best interest of the payee, taking into account the welfare and support of the payee's dependents." <u>Id</u>. § 5891(b)(2). An "applicable State statute" is a statute enacted for the purpose of issuing qualified orders by the state in which the payee is domiciled or, if the payee's state of domicile has not enacted such a statute, the state "in which either the party to the structured settlement . . . or the person issuing the funding asset for the structured settlement is domiciled or has its principal place of business." <u>Id</u>. § 5891(b)(3). "Applicable State court" includes a court in the payee's state of domicile if that state has not enacted a qualified order enabling statute. <u>Id</u>. § 5891(b)(4)(B).

Accordingly, if the state in which the payee of a structured settlement is domiciled has not enacted a qualified order enabling statute, a party to a transaction that would otherwise trigger the § 5891 tax may request that a trial court in the payee's state of domicile apply the enabling statute of the jurisdiction in which the party funding the structured settlement is located. In this case, because Wilson is domiciled in New Hampshire, because New Hampshire has not enacted a § 5891(b)(2) enabling statute, and because the annuity issuer has its principal place of business in Illinois, Blazingstar filed a

petition asking the superior court to apply the Illinois Structured Settlement Protection Act (Illinois Act). The Illinois Act provides, in relevant part:

> No direct or indirect transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of structured settlement payment rights unless the transfer has been approved in advance in a final court order . . . based on express findings by such court . . . that:
>
> > (1) the transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependents;
> >
> > (2) the payee has been advised in writing by the transferee to seek independent professional advice regarding the transfer and has either received such advice or knowingly waived such advice in writing; and
> >
> > (3) the transfer does not contravene any applicable statute or the order of any court or other government authority.

215 Ill. Comp. Stat. Ann. 153/15 (West 2008). The Illinois Act further requires that certain disclosures be made to the payee no less than three days prior to when the payee executes the transfer agreement. See id. 153/10.

In support of its petition, Blazingstar submitted: (1) a copy of its agreement with Wilson; (2) copies of 26 U.S.C. § 5891 and the Illinois Act; (3) a disclosure, executed by Wilson, purporting to comply with the Illinois Act; (4) a statement, executed by Wilson, acknowledging that Blazingstar advised him to obtain independent professional advice concerning the transaction, and that he declined such advice; and (5) an affidavit by Wilson. The disclosure reflected that in exchange for $125,000, Wilson would transfer two payments, due in 2023 and 2028, totaling $400,000 but having a discounted present value of $298,042. Thus, the disclosure revealed that the $125,000 Wilson would receive amounted to approximately 41.9 % of the present value of the payments he would sell. In the affidavit, Wilson asserted that: (1) he is over the age of eighteen, is not married, has no dependent children, and is not legally obligated to support anyone; (2) he reviewed, and understood, the disclosure, and understood that he would be foregoing annuity payments; (3) Blazingstar advised him to seek independent professional advice regarding the sale; (4) he did not intend to use the sale proceeds for daily expenses, but intended to

2

apply them to the purchase of a home; and (5) he believed the transaction would improve his standard of living, and would be in his best interest.

The trial court held a hearing on both Blazingstar's petition and a petition filed by a competing company; Wilson and his father attended the hearing. The trial court opened the hearing by observing that, shortly before the petitions were filed, another judge had denied a similar petition to transfer the same structured settlement, and that Wilson was now "negotiating with two companies that are going to take some substantial long-term investments and bring [them] down to a number [it found] abhorrent." The court further explained that the settlement funds were placed "into a structure when [Wilson was] a minor because of issues that arose during lead paint poisoning," and that it had "read [his] neuro-psych test and the indication of the intellectual limitations as a result of that exposure." The court stated that it would not "read into the record what was said by [a doctor] back in 1993," but that it was "extremely concerned about [Wilson's] downstream efforts economically to support [him]self," that it would deny the petitions, and that it would not "entertain further efforts" to transfer the structured settlement. We note that, in its motion to reconsider, Blazingstar represented that it did not share the trial judge's personal knowledge of the settlement file, and that whatever documents from it that the court reviewed were not made part of the record.

At no point during the hearing did Wilson testify. The trial court invited his father, however, to address it. His father explained that he and his wife established the structured settlement because, when Wilson was a child, they were told that he would never have capacity to care for himself. Since that time, however, Wilson had graduated high school with a 3.6 grade point average, had "just made the dean's list in college," would be graduating from his current college program in approximately three months, and would be pursuing a bachelor's degree. According to the father, Wilson had worked hard and "amazed us all." Further, Wilson's father stated that the agreement was to transfer just two annuity payments, leaving a payment of $350,000 in place when he turned forty. Allowing Wilson to take $125,000 now, in his father's view, would provide him a "start ahead of everybody else instead of being in debt [from] college." The trial court responded by characterizing Blazingstar and the other petitioner as "shark companies" interested only in "fattening their pocket[s]," and that it did not want them to do so at Wilson's expense. The trial court further stated that that was its view "almost every single time these matters come before [it]," that it was "the only judge that's assigned to these structures in this county," and that it "abhor[s] the companies that try to bust structured settlements, particularly in minor settlements."

Following the hearing, the trial court issued an order stating, in its entirety: "Transfer Denied. See history dating back to minor's settlement. No further petitions to transfer shall be entertained." On reconsideration, the trial

3

court modified the order to state: "no further petitions to be filed without a substantial change in circumstances." This appeal followed.

On appeal, Blazingstar raises several arguments challenging the trial court's actions as violations of due process and unsustainable exercises of discretion. Among its arguments, it asserts that the trial court failed to apply the best interest standard of 26 U.S.C. § 5891 and the Illinois Act, noting that the trial court did not examine Wilson directly, but relied upon a 1993 report that was not part of the record, that it failed to articulate why the "history dating back to minor's settlement" precluded the transaction, and that it ignored the father's representations as to how circumstances had changed since 1993. Because we cannot determine, upon this record, whether the trial court could reasonably have found that the transfer was not in Wilson's best interest, we vacate its order and need not address Blazingstar's constitutional arguments. See Olson v. Town of Fitzwilliam, 142 N.H. 339, 345 (1997) (noting that we decide cases on constitutional grounds only when necessary).

At the outset, we note that, regardless of the trial court's personal view of "companies that try to bust structured settlements," the right of private parties to enter into enforceable contracts is a constitutionally-protected interest. See, e.g., Tuttle v. N.H. Med. Malpractice Joint Underwriting Assoc., 159 N.H. 627, 642-43 (2010). Here, both 26 U.S.C. § 5891 and the Illinois Act required that the trial court determine whether the transfer was in Wilson's best interest, taking into account the welfare and support of any dependents that he might have. Wilson specifically averred in his affidavit that he has no dependents. Although the trial court cited a "history dating back to minor's settlement" in its order, and referenced a 1993 report at the hearing, neither the report nor the settlement file was made part of the record, and the trial court did not examine Wilson directly. Moreover, according to Wilson's father, his success in the two decades that have passed since 1993 contradicts whatever the settlement file may have shown with respect to his ability to care for himself.

Absent a request for specific findings of fact, the trial court is ordinarily not required to make specific findings, but is presumed to have made all findings necessary to support its decision. Smith v. Lillian V. Donahue Trust, 157 N.H. 502, 508 (2008). However, the standard of review that we apply to the trial court's findings – whether the findings could reasonably have been made on the evidence presented, Thompson v. C&C Research & Dev., 153 N.H. 446, 449 (2006) – presupposes that the trial court "has made findings that provide an adequate record of [its] reasoning sufficient for a reviewing court to render meaningful review." Motorsports Holdings v. Town of Tamworth, 160 N.H. 95, 107 (2010) (discussing similar standards of review of a planning board decision). In this case, the record is devoid of findings or evidence that would allow us to assess whether the trial court reasonably could have determined that the transfer is not in Wilson's best interest. Accordingly, we vacate the

trial court's order, and direct it upon remand to render express findings relative to its best interest analysis with sufficient detail to allow for meaningful appellate review. Cf. Kalil v. Town of Dummer Zoning Bd. of Adjustment, 155 N.H. 307, 311-12 (2007) (upholding trial court's decision to vacate zoning board decision and remand for the board to clarify its decision); In the Matter of Gordon and Gordon, 147 N.H. 693, 700 (2002) (directing trial court on remand to make specific findings to facilitate appellate review).

We leave it to the trial court's discretion on remand to determine whether a further evidentiary hearing is necessary to comply with this order. To the extent, however, that the trial court intends to rely on documents in the settlement file, it shall make that file available to the parties subject to whatever confidentiality orders it deems appropriate, and shall allow the parties an opportunity to respond to the evidence contained within it and to request a further evidentiary hearing.

Vacated and remanded.

Dalianis, C.J., and Hicks, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**