NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court-Merrimack Family Division
Case No. 2022-0664
Citation: In re Guardianship of J.H., 2024 N.H. 3

IN RE GUARDIANSHIP OF J.H.

Argued: September 19, 2023
Opinion Issued: January 24, 2024

Bernazzani Law, PLLC, of Nashua (Anthony J.Naro on the brief and orally), for the appellant.

Smith-Weiss Shepard Kanakis & Spony, P.C., of Nashua (Brittney M. White on the brief and orally), for the appellee.

HANTZ MARCONI, J.

[¶ 1] The minor's guardian and maternal grandmother appeals an order of the Circuit Court (Derby, J.) enjoining her from testifying against the appellee/father's release from prison at any parole or similar hearings. We reverse in part and remand.

I

[¶ 2] The following facts are undisputed or are otherwise drawn from the record. J.H. is a six-year-old child. His father has been incarcerated since December 2017 and has a history of criminal charges involving domestic

violence and drug possession.  J.H.'s mother died in 2019 when J.H. was less than three years old.  His grandmother was appointed guardian of J.H.'s person and estate shortly thereafter, and J.H. has remained in her care since.

[¶ 3]  The guardian and the father have been at odds throughout this case. When the guardianship petition was filed, the father was subject to a no-contact order barring communications with J.H.  Subsequently, the father sought contact and visitation with J.H.  Over the guardian's objections, the court ordered that the father could communicate with J.H. by mail and eventually progress to video visits.  Both parties have accused the other of violating the court's orders.  Adding to the conflict, the guardian has petitioned to terminate the father's parental rights.  In an April 2022 order, the court expressed its frustration that "[d]espite [J.H.'s] tragic young life that has seen him lose both of his parents before his third birthday, both sides of [J.H.'s] extended family are not able to put their differences aside and cooperate for [J.H.'s] benefit."

[¶ 4]  The court placed restrictions on both parties, including limiting the content of father's communications with J.H.  The court also imposed restrictions on the guardian.  In an October 2022 order, the court ordered that the guardian and her husband "are enjoined from testifying against father's release at any parole or similar hearing without first seeking leave of this court."  The guardian moved for reconsideration, arguing that this restriction violated her right to freedom of speech.  The court denied her motion, reasoning that "[J.H.'s] best interests outweigh the guardian['s] free speech rights to keep father incarcerated if he becomes eligible for a parole hearing." This appeal followed.

II

[¶ 5]  The circuit court has wide discretion in the determination of guardianship matters, which will not be disturbed except upon a clear showing that its discretion has been unsustainably exercised.  In re Jesse F., 143 N.H. 192, 193 (1998); RSA 490-F:3 (Supp. 2023) (granting the circuit court the jurisdiction and powers previously conferred upon the probate courts).  We will not overturn the court's rulings if they are supported by the evidence and are not erroneous as a matter of law.  In re Jesse F., 143 N.H. at 194.

[¶ 6]  The guardian makes two arguments on appeal.  First, she argues that the court's order violates her constitutional right to freedom of expression. Second, she asserts that the court exceeded its statutory authority under RSA chapter 463.  As a preliminary matter, we note that the guardian did not raise her statutory argument before the trial court.  Ordinarily, we will not review arguments that were not timely raised before the trial court.  Camire v. Gunstock Area Comm'n, 166 N.H. 374, 377 (2014).  This rule, however, is not

2

absolute.  Id.  Preservation is a limitation on the parties to an appeal and not the reviewing court.  Id.  We follow a strong policy against reaching a constitutional issue in a case that can be decided on a nonconstitutional ground, and even when a dispositive statutory issue is not raised by the parties, we may consider it as a way to avoid a needless constitutional decision.  State v. Hodgkiss, 132 N.H. 376, 379 (1989).  Additionally, both parties addressed the issue during oral argument before the court, see Camire, 166 N.H. at 377, and the issue constitutes a discrete question of statutory interpretation, requiring no further factual development, see State v. Kardonsky, 169 N.H. 150, 152 (2016).  Thus, we elect to address the guardian's statutory argument.

[¶ 7]  The guardian asserts that the court's order reaches beyond the authority conferred by RSA chapter 463 and that "the court's authority is limited to issuing orders relative to the guardianship of the minor."  In response, the father asserts that RSA 463:12, IV (2018) grants the circuit court the authority to impose this restriction on the guardian.  He contends that because of the acrimony between the guardian and the father, it is in J.H.'s best interests for the court to prevent the guardian from giving testimony to the parole board motivated by an intent to prevent contact between the father and J.H.

[¶ 8] Determining whether the circuit court had the statutory authority to impose this restriction on the guardian requires us to interpret the applicable provisions of RSA chapter 463.  The interpretation of a statute is a question of law, which we review de novo.  Avery v. Comm'r, N.H. Dep't of Corr., 173 N.H. 726, 733 (2020).  In matters of statutory interpretation, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning.  Id.  We interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.  We construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result.  Id.  We do not consider words and phrases in isolation, but rather within the context of the statute as a whole, which enables us to better discern the legislature's intent in light of the policy or purpose sought to be advanced by the statutory scheme.  Id.  Absent an ambiguity, we will not look beyond the language of the statute.  Id.

[¶ 9] RSA chapter 463 confers exclusive jurisdiction over the guardianship of minors to the circuit court.  See RSA 463:4 (2018); RSA 490-F:3.  RSA 463:8 permits the court to "appoint a guardian of the person or of the estate or of both," and grants the court authority over the guardianship proceedings.  RSA 463:8 (2018).  Once the court has appointed a guardian, RSA 463:12 sets forth the guardian's powers and duties.  See RSA 463:12 (2018).

3

[¶ 10] RSA 463:12, I, provides that "[e]xcept as otherwise expanded or limited by statute or order of court . . . a guardian of the person of a minor has the powers and responsibilities of a parent regarding the minor's support, care and education." RSA 463:12, I. Subsection II of the statute directs, inter alia, that "a guardian shall" "[b]ecome or remain personally acquainted with the minor and maintain sufficient contact with the minor to know of the minor's capacities, limitations, needs, opportunities, and physical and mental health," "[t]ake reasonable care of the minor's personal effects and commence protective proceedings if necessary to protect other property of the minor," "[a]pply any available money of the minor to the minor's current needs for support, care, and education," and "[c]onserve any excess money of the minor for the minor's future needs." RSA 463:12, II(a)-(d); see also RSA 463:2, IV (2018) ("Unless otherwise indicated, the term 'guardian' means guardian of the person and of the estate of the minor."). Subsection III then provides, inter alia, that "[a] guardian may," in certain circumstances, "[r]eceive money payable for the support of the minor," "take custody of the person of the minor and establish the minor's place of abode," "institute proceedings . . . to compel the performance by any person of a duty to support the minor," and "[g]ive any necessary consent or approval to enable the minor to receive medical or other professional care." RSA 463:12, III(a)-(d); see also RSA 463:2, IV. Relevant here, the statute also includes a catchall provision, which states, in pertinent part: "The court may limit or restrict the powers of the guardian or impose additional duties if it deems them desirable in the best interests of the minor." RSA 463:12, IV. The father relies on this provision to assert that the court may restrict the guardian and the guardian's spouse from speaking at the father's parole hearing, so long as the court finds that such a restriction is in the best interests of the minor.

[¶ 11] Reading subsection IV within the context of RSA 463:12 as a whole, we conclude that it does not authorize the court to impose this restriction on the guardian and her spouse. RSA 463:12 outlines the guardian-minor relationship and the functions of the guardian. Subsection I of the statute conveys the "powers and responsibilities of a parent regarding the minor's support, care, and education." RSA 463:12, I. Subsections II and III then articulate specific powers and responsibilities related to the minor's overall wellbeing, encompassing the minor's health, property, and legal and financial affairs. RSA 463:12, II-III. The statute empowers and obliges the guardian to exercise control over many aspects of the minor's life to ensure the general wellbeing of the minor. Subsection IV then authorizes the court to "limit or restrict the powers of the guardian or impose additional duties." RSA 463:12, IV.

[¶ 12] Read in the context of the whole statute, the "powers" and "duties" contemplated here relate to the guardian's role as custodian of the minor's affairs and welfare. See State v. Proctor, 171 N.H. 800, 806 (2019) (explaining

4

that under the principle of ejusdem generis, "where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same kind or class as those specifically mentioned" (quotation omitted)).  Restrictions on the guardian's and her spouse's participation in a parole hearing, however, bear no connection to the guardian's management of the minor's affairs.  They are unrelated to the guardian-minor relationship.  If we were to read subsection IV as broadly as the father suggests, the court could impose restrictions that extend far beyond the guardianship and into the personal life of the guardian.  We decline to read the statute so broadly, and thus conclude that the restriction here is not permitted under RSA 463:12, IV.

[¶ 13] The father relies on In the Matter of Salesky & Salesky, where we interpreted other guardianship statutes with catchall provisions nearly identical to RSA 463:12, IV.  In the Matter of Salesky & Salesky, 157 N.H. 698, 704 (2008); see RSA 464-A:25, :26 (2018 & Supp. 2022) (powers and duties of the guardians of incapacitated persons and their estates).  In Salesky, the parties disputed whether a guardian could maintain a divorce action on a ward's behalf where the statutes did not expressly grant this power to the guardian.  Salesky, 157 N.H. at 702-05.  We explained that pursuant to the catchall provisions, "the duties that a probate court may impose upon a guardian are not limited to those specifically enumerated," and "[t]he only limitation upon the probate court's authority to impose additional duties upon a guardian is that the duties be desirable for the best interests of the ward." Id. at 704 (quotation omitted).  We concluded that the court could grant a guardian this authority "when it deems such action desirable for the best interests of the ward."  Id. at 704 (quotation omitted).  Salesky, however, differs from this case.  Managing a ward's legal affairs, such as a divorce, is similar to a guardian's other duties and falls well within the guardian-ward relationship.  It is one of many aspects of a ward's life that a guardian may need to manage to ensure the welfare of the ward.  In contrast, speaking at the father's parole hearing is a personal activity, not one encompassed within the role of guardian.  Thus, Salesky does not support the father's position.

[¶ 14] Because RSA 463:12 does not authorize the court to restrict the guardian or her spouse from speaking at the father's parole hearing, we conclude that the circuit court exceeded its statutory authority.  We reverse that portion of the court's order and remand.

Reversed in part and remanded.

MACDONALD, C.J., and BASSETT and DONOVAN, JJ., concurred.

5